Edwin R. MacKETHAN, Receiver of the
Norfolk Savings and Loan
Corp., Plaintiff,

v.

PEAT, MARWICK, MITCHELL & CO.,
et al., Defendants.

Civ. A. No. 74–0013–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 5, 1977.

Jordan A. Pugh, III, Norfolk, Va., Oren R. Lewis, Jr., Gary R. Sheehan, Arlington, Va., J. Vernon Patrick, Jr., Michael L. Edwards, Birmingham, Ala., John E. Fricker, Arlington, Va., for plaintiff.

James L. Sanderlin and R. Gordon Smith, Robert H. Patterson, Jr., McGuire, Woods & Battle, Richmond, Va., Gordon E. Campbell, Campbell, Lustig & Hancock, Norfolk, Va., for defendants.

Leonard P. Novello, Peat, Marwick, Mitchell & Co., New York City, Kenneth H. Lambert, Jr., Williams, Worrell, Kelly & Greer, Norfolk, Va., William H. King, Jr., Wellford L. Sanders, Jr., McGuire, Woods & Battle, Richmond, Va., for Peat, Marwick, Mitchell & Co.

Robert A. Holmes, Norfolk, Va., for A. Page Ware, Jr.

John B. King, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Charles H. McCoy, Jr.

Ransom W. Etheridge, Virginia Beach, Va., for F. Littleton Powell.

## MEMORANDUM

MERHIGE, District Judge.

Norfolk Savings and Loan Corporation (NS&L), a state-chartered industrial loan association, was closed on January 2, 1973. Thousands of persons, including those who had purchased Norfolk Savings and Loan "certificates of investment" (CI's) suffered immediate monetary loss. Certain of the NS&L officers were subsequently convicted in Federal Court of mail fraud and other crimes in connection with the operation of the corporation.

Edwin R. MacKethan, plaintiff, was appointed receiver of NS&L. Defendants are Peat, Marwick, Mitchell & Co. (PMM), an accounting firm; certain of its employees and senior partners; and former officers and directors (hereinafter "Officers") of

NS&L. Plaintiff alleges, *inter alia*, that defendant Officers concealed material financial information in violation of the antifraud provisions of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77g, and the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b). PMM is alleged to have aided this claimed fraud by failing to disclose certain facts and issuing materially misleading and deceptive reports of NS&L's financial condition.

The matter comes before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiff contends that this Court has jurisdiction pursuant to § 22(a) of the 1933 Act[1] and § 27 of the 1934 Act.[2] Defendants, on the other hand, contend that the certificates of investment issued by NS&L are not "securities" within the meaning of those Acts,[3] so that the antifraud provisions invoked by plaintiff are inapplicable.

In determining whether the certificates of investment issued by NS&L are "securities" subject to provisions of either Securities Act, the Court is guided by two principles. First, the Acts are remedial in nature, and should therefore be construed broadly to effectuate the statutory policy affording extensive protection to the investing public. See *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Second, the Court must look both at the form[4] and the substance[5] of the instrument in issue to determine whether the underlying transaction embodies significant characteristics commonly associated with securities.

---

1. 15 U.S.C. § 77v(a) provides in pertinent part:
   "The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter."

2. 15 U.S.C. § 78aa provides in pertinent part:
   "The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."
   Plaintiff also alleges jurisdiction pursuant to 28 U.S.C. §§ 1337 and 1339. In light of the disposition of the instant jurisdictional question, the Court does not address these claims, nor consider the timeliness of plaintiff's assertion of them.

3. § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) provides:
   "When used in this chapter, unless the context otherwise requires—
      \*    \*    \*    \*    \*    \*
   (10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment con-
   tract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."
   The Securities Act of 1933, 15 U.S.C. § 77b(1) provides:
   "When used in this subchapter, unless the context otherwise requires—
   (1) The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

4. *Id.* at 339, 88 S.Ct. 548; *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 850, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

5. 389 U.S. at 336, 88 S.Ct. 548.

The relevant facts are these: NS&L was an industrial loan association incorporated pursuant to § 6.1–227 *et seq.*, Code of Virginia, Title 6, (1950). Under state law it was authorized to make loans to corporations and individuals, but was prohibited from accepting deposits. Instead, industrial loan associations such as NS&L were permitted to sell "certificates of investment," to obtain operating capital.[6] CI's were not eligible for any federal deposit insurance. NS&L itself was not subject to federal banking regulations, and was substantially less regulated than state banks.[7]

CI's were debt instruments, not equity shares. The holders were entitled to a fixed rate of interest regardless of NS&L's profits or losses, and had no voting rights. The CI's could be purchased under either a fully paid or instalment account plan. The former was similar to a certificate of deposit issued by a bank: the purchaser bought a promise to pay a fixed sum, plus interest, at a specified rate, at a future date. The latter had some of the characteristics of an ordinary savings account: the purchaser bought a CI with a small initial payment and then could make periodic "deposits." Money on "deposit" earned interest at a rate specified in the initial contract. Neither type of CI was negotiable, but purchasers could withdraw their savings, generally without notice.

Defendants' contention that these certificates are not securities is largely premised upon what the Court views as a mistaken interpretation of two Supreme Court opinions. In *Tcherepnin v. Knight*, supra, the Court held withdrawable capital shares in an Illinois savings and loan association to be securities under the 1934 Act, noting that the shares had most of the features of common stock: earnings were tied to the profitability of the association; each shareholder had voting rights; shares were negotiable; and the money raised by sales of shares was considered part of the capital structure of the association under Illinois law. In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court held that stock in cooperative housing projects was not "stock" within the meaning of the Securities Acts because the primary purpose of purchasers of such shares was "solely to acquire subsidized low-cost living space," (represented as one share of stock) 421 U.S. at 851, 95 S.Ct. at 2060, and not an investment for profit. The Court again recited the various features which are generally associated with stock.

■ Defendants point out that none of these indicia are present in the CI's issued by NS&L. Factually, that contention is well taken. Stock, however, is not the only form of security. The Securities Acts encompass debt as well as equity instruments within their scope. Neither voting rights, negotiability, nor earnings keyed to profits is a requisite feature of all forms of securities. The shares held to be securities in *Tcherepnin, supra*, were declared nonnegotiable under Illinois law. Thus, the several factors highlighted by defendants in support of their contention that CI's are not securities "serve only to distinguish among different types of securities. They do not, standing alone, govern whether a particular instrument is a security under the Federal Securities Law." *Tcherepnin v. Knight*, supra, 389 U.S. at 343, 88 S.Ct. at 557.

■ Plaintiff's position, that the certificates of investment are securities subject to the antifraud provisions of Securities Acts,

---

**6.** Money raised by sales of certificates of investment was not *equity* capital under Virginia law. § 13.1–2 Code of Virginia (1950), as amended.

**7.** "[State] banks are restricted with respect to: loans secured by real estate, the investments they may make, the dividends they may pay, the reserves they must maintain, the interest they may pay on deposits and the amount of their assets they may pledge. None of these

restrictions are imposed upon industrial associations with the result that their certificate of investment accounts are not really as well protected as bank deposits." S.Doc. No. 12 (Va. 1950).

The powers of industrial loan associations have since been altered substantially. *See* §§ 6.1–227 et seq., Code of Virginia (1950), as amended.

is supported by the Securities and Exchange Commission. The Commission, in its *amicus curiae* memoranda in *Burrus, Cootes & Burrus v. MacKethan*, 537 F.2d 1262 (4th Cir. 1976), has urged that since NS&L certificates of investment "[were] represented to be an investment, . . . evidenced an obligation of a corporate enterprise, and . . . [were] sold upon the promise of economic benefits," they should be deemed "securities" to effectuate the broad remedial purposes of the securities laws. Memorandum of the Securities and Exchange Commission, *Amicus Curiae* in Support of the Plaintiff-Appellee's Petition for Rehearing and Suggestion for Rehearing *en banc* (filed September 13, 1976). The view of an agency charged with administering the governing statute is entitled to great weight. *See, e. g., Saxbe v. Bustos*, 419 U.S. 65, 74, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974); *Investment Company Institute v. United States*, 401 U.S. 617, 626–27, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971).

For the defendants to prevail on the instant motion, the Court would have to be satisfied that under no set of facts could plaintiff substantiate his contention that the instruments upon which jurisdiction of

this Court is invoked are securities. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted, *id.*, and the complaint is to be liberally construed in favor of the plaintiff. *See* Federal Rule of Civil Procedure 8(f).

Viewing the pleadings in the manner in which it must, the Court is not satisfied that plaintiff will fail to prove that either or both forms of CI's are securities. In *Forman, supra*, the Supreme Court stated that the distinguishing feature of "securit[ies] transaction[s] . . . is an investment where one parts with his money in the hope of receiving profit from the efforts of others . . . ." 421 U.S. at 858, 95 S.Ct. at 2063. On the pleadings, purchasers of NS&L certificates of investment surely meet that test.

Specifically, there are two theories in support of the Court's jurisdiction of the instant action. Certificates of investment may be "evidence[s] of indebtedness"[8] within the 1933 Securities Act and/or "investment contract[s]"[9] under

---

**8.** "The term 'evidence of indebtedness' includes all contractual obligations to pay in the future for consideration presently received." *United States v. Austin*, 462 F.2d 724, 736 (10th Cir. 1972). CI's clearly fall within that category.

Defendants assert that a distinction should be drawn between evidences of indebtedness issued and purchased in an investment context and those given in commercial context, the former being subject to the Securities Acts while the latter are exempt. *See, e. g., Great Western Bank v. Kotz*, 532 F.2d 1252 (9th Cir. 1976); *C. N. S. Enterprises, Inc. v. G&G Enterprises, Inc.*, 508 F.2d 1354 (7th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). The Court concludes that NS&L certificates of investment were investment in nature, and therefore does not reach this question.

Defendants next argue that since purchasers of NS&L CI's could generally withdraw their savings on demand, those savings were the equivalent of currency (which is specifically exempted from the Securities and Exchange Act of 1934, 15 U.S.C. § 78c(a)(10)), and therefore not invested. This line of contention is, in the Court's view, without merit. Currency does not earn interest. The relative liquidity of

the certificates does not alter their basic character: they are income-producing investments.

**9.** An "investment contract" is characterized by "investment of money in a common enterprise with profits to come [to the investor] solely from the efforts of others." *SEC v. W. J. Howey Company*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). "A common enterprise is one in which the fortunes of the investor are interwoven with, and dependent upon, the efforts and success of those seeking the investment . . . ." *SEC v. Glen W. Turner Enterprises, Inc.*, 474 F.2d 476, 480–81 (9th Cir. 1973).

There would appear to be no issue in this case that purchasers of certificates of investment were completely passive, relying totally on Norfolk Savings & Loan management properly to manage the enterprise. Nor would there appear to be any doubt but that these investors' fortunes were "interwoven with and dependent upon" Norfolk Savings & Loan. *See Safeway Portland Employees Federal Credit Union v. C. H. Wagner & Company, Inc.*, 501 F.2d 1120, 1123 (9th Cir. 1974) (Promise of broker to pay a $5/8\%$ bonus on maturity of certificate of deposit made the latter an invest-

both the 1933 and 1934 Acts. As the Supreme Court stated in *Tcherepnin*, policy considerations must play a large role in making this determination. Proof of circumstances surrounding the sale transaction may cause an instrument to be labeled a security where its form alone would not require such a conclusion. *See SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1934); *SEC v. Continental Commodities Corp.*, 497 F.2d 516, 527 (5th Cir. 1974). The plaintiff here alleges that the manner in which NS&L advertised its certificates of investment brings these transactions within the purview of the Federal Securities laws. The Securities Exchange Commission suggests that the absence of adequate regulation should be considered.

The Court concludes that each of the foregoing factors is relevant to its determination of the jurisdictional issue. *See Tcherepnin v. Knight*, 389 U.S. at 345–46, 88 S.Ct. 548, supra. It is obvious the resolution of this issue must await trial.

An appropriate order will issue.

ment contract, and therefore a security, because "future payment of the bonus was dependent on the continued success and solvency of [the broker]").