N. Glenn SMITH, For himself and all Plan Participants similarly situated on behalf of the James McGraw, Inc., 401(k) Plan, Plaintiff–Appellant,

v.

George SYDNOR, Jr.; The Mcgraw Group, Incorporated, Defendants–Appellees.

No. 98–2235.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1999.

Decided July 9, 1999.

Richard K. Bennett, McSweeney, Burtch & Crump, P.C., Richmond, Virginia, for Appellant. Adriaen Meredith Morse, Jr., Leclair Ryan, P.C., Richmond, Virginia, for Appellees. David J. Walton, McSweeney, Burtch & Crump, P.C., Richmond, Virginia, for Appellant. Stephen T. Gannon, James A. Murphy, Stephen T. Perkins, Leclair Ryan, P.C., Richmond, Virginia, for Appellee McGraw Group; Hugh M. Fain, III, David Shane Smith, Spotts, Smith, Fain & Buis, P.C., Richmond, Virginia, for Appellee Sydnor.

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

Reversed and remanded by published opinion. Judge WILLIAMS wrote the opinion, in which Judge NIEMEYER and Judge TRAXLER joined.

## OPINION

WILLIAMS, Circuit Judge:

N. Glenn Smith appeals the district court's Rule 12(b)(6) dismissal without prejudice of his derivative action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1999). The district court concluded that although Smith's amended complaint alleged that The McGraw Group, Inc. (McGraw),[1] and its President, Chief Operating Officer, and majority stockholder, George W. Sydnor, Jr., breached their fiduciary duties with respect to a 401(k) plan administered by McGraw by engaging in imprudent and self-dealing conduct, Smith's claims were merely a recasting of a claim for benefits, which requires exhaustion of internal plan provisions before Smith could bring an action in federal court. We disagree with the district court's characterization of Smith's claims and conclude that Smith's amended complaint alleges facts that, if proven, establish breaches of fiduciary duties by McGraw and Sydnor independent of a denial of benefits. We further hold that the exhaustion requirement does not apply to a claim for breach of fiduciary duty, and, therefore, Smith was not required to avail himself of administrative remedies before bringing suit in federal

---

1. In December 1997, this corporation amended its Articles of Incorporation to change its name from James McGraw, Inc. to The McGraw Group, Inc. For convenience, we refer to the corporation as McGraw throughout the opinion.

court alleging breaches of fiduciary duties as defined by ERISA. Accordingly, we reverse the district court's dismissal of Smith's action and remand with the instruction to reinstate his amended complaint.

## I.

Because this case is on appeal from a Rule 12(b)(6) dismissal, we take the following facts as alleged in Smith's amended complaint to be true. *See Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 141 (4th Cir.1996). On January 1, 1989, McGraw, a corporation primarily engaged in the sale of industrial equipment and parts, established an Employee Stock Ownership Plan (ESOP) for the benefit of its employees. On December 29, 1989, McGraw filed amended and restated Articles of Incorporation to adopt a plan of reorganization. The Articles provided that preferred stock could be issued only to the ESOP or to participants in the ESOP. The Articles also stated that at any time following the earlier of December 19, 1996, or the date at which a loan agreement between McGraw and the ESOP was satisfied, plan participants who held preferred stock pursuant to a distribution from the ESOP could require their stock to be redeemed at a price of $260.31 per share. The Articles also provided that the shares of preferred stock paid cumulative dividends at the rate of eight percent of the par value per year.

Effective January 1, 1993, McGraw converted the ESOP into the 401(k) Savings Plan & Trust (the 401(k) Plan). At all relevant times, George W. Sydnor, Jr. was a trustee and fiduciary with respect to the 401(k) Plan within the meaning of ERISA and was also the President and Chief Operating Officer of McGraw. Prior to September 27,1996, Kenneth Fisketjon was the Chairman and Chief Executive Officer of McGraw and served as co-trustee of the 401(k) Plan. Prior to September 30, 1996, Sydnor and Fisketjon each held fifty percent of the outstanding common stock in McGraw, which they purchased in December 1989 with the assistance of a large ESOP loan. Willamette Management Associates, which conducted annual appraisal reports of the ESOP preferred stock from 1990 to 1995, concluded in its 1996 draft report, which was delivered to Sydnor and McGraw in August 1996, that the fair market value of the preferred stock was $128.35 per share and that the common stock "ha[d] no residual equity value." (J.A. at 143.)

In 1996, McGraw began experiencing financial difficulties that led to discussions with Columbia Naples Capital, L.L.C. (CNC) concerning a potential investment of capital in McGraw. CNC signed a letter of intent in June 1996 to invest several million dollars in McGraw in exchange for approximately forty-five percent of the common stock. CNC, like other prospective purchasers and investors, was concerned about McGraw's obligation to repurchase the preferred stock at $260.31 per share, plus dividends. To avoid this problem, CNC proposed that McGraw redeem the preferred stock. McGraw contacted Willamette to see if it was willing to give an appraisal of the value of the preferred stock to support the transaction between CNC and McGraw. Willamette refused to give such an opinion because it would be inconsistent with its prior appraisal, which allocated all of the equity value of McGraw to the preferred stock and none to the common stock.

Undeterred by Willamette's refusal to give a positive appraisal report, on September 30, 1996, Sydnor and McGraw hired Charles Merriman of Scott & Stringfellow, Inc., to give a "fairness opinion." Merriman opined that $70.00 per share was "adequate consideration" for the purchase of the preferred stock. On the same day, Sydnor, acting on behalf of himself, the 401(k) Plan, and McGraw, consummated a series of transactions with CNC. Acting as sole trustee of the 401(k) Plan following Fisketjon's resignation as co-trustee, Sydnor accepted McGraw's "of-

fer" to purchase the preferred stock for $70.00 per share, an amount far less than the $260.31 value per share provided by the Articles of Incorporation plus the unpaid dividends of $104.15 per share, which totaled $364.46 value per share of preferred stock. This price of $70.00 per share was also much less than the appraised fair market value of $128.35 per preferred share calculated by Willamette in its latest draft report. As part of the same transaction, Sydnor retained his common shares in the company, exchanged a note for additional common shares, and received several stock options, resulting in his ownership of approximately twenty-five percent of there capitalized company. Sydnor also obtained a three-year employment contract and other benefits to the detriment of the preferred shareholders.[2] "Fisketjon agreed to sell his common stock to ... McGraw for a total value of approximately $584,387.02 or $66.23 per common share." (J.A. at 141.)

N. Glenn Smith was an employee with McGraw from October 1968 until December 1997. On February 16, 1998, Smith submitted his distribution request and pursuant to his election, received a cash distribution in March 1998 of $24,893.88, representing the value of his 401(k) account. On April 22, 1998, Smith brought suit against Sydnor and McGraw, alleging, *inter alia*, that they breached their fiduciary duties to participants in the 401(k) Plan. After Sydnor and McGraw filed Rule 12(b)(6) motions to dismiss, Smith moved for leave to file an amended complaint. At a hearing on Sydnor's and McGraw's motions to dismiss, the district court granted Smith's unobjected-to motion to amend his complaint. Smith filed an amended complaint on behalf of himself and employees and former employees of McGraw who were beneficial owners of shares of preferred stock of McGraw pursuant to the ESOP and on behalf of the 401(k) Plan.

Count One of the amended complaint alleged that Sydnor and McGraw breached their fiduciary duties as trustees for the 401(k) Plan in violation of ERISA §§ 404 and 406, 29 U.S.C.A. §§ 1104 and 1106, respectively,[3] by (1) selling the preferred

---

**2.** Smith alleges that Sydnor received, as part of the three-year employment agreement: (1) an annual salary of $190,000.00, (2) a company car guaranteed to be "no worse" than a 1996 Lexus sedan, (3) country club membership, (4) life insurance, and (5) the titles of President and Chief Operating Officer. Smith alleges that, in addition, CNC granted Sydnor two separate stock option packages and arranged for McGraw to repay a promissory note it owed to Sydnor for $300,000 by selling Sydnor 5,134.89 shares of common stock. According to Smith, Sydnor's package of benefits was worth a total of almost $1 million.

**3.** ERISA § 404(a)(1) provides, in relevant part:

Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary·shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then pre-

vailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C.A. § 1104(a)(1)(A)-(B) (West 1999).

ERISA § 406 provides, in relevant part:

(a) Transactions between plan and party in interest

Except as otherwise provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [list of prohibited transactions with party in interest, including sale of assets].

. . . .

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

stock at a grossly undervalued price and engaging in self-dealing conduct throughout the transactions to the detriment of the Plan participants and beneficiaries; (2) failing to employ the appropriate methods to investigate the investment, and, thus, failing to act with the care and skill of a prudent person; (3) causing the 401(k) Plan to sell its assets to a party in interest; (4) dealing with the 401(k) Plan's assets in their own interest and/or for their own account; (5) acting in a capacity involving the 401(k) Plan on behalf of a party whose interests were adverse to the 401(k) Plan and its participants; and (6) receiving consideration for their own personal account from CNC (and from CNC and/or McGraw in Sydnor's case) in connection with a transaction involving 401(k) Plan assets. Count Two alleged that McGraw failed to discharge its duties as a co-fiduciary with respect to the 401(k) Plan in violation of ERISA § 405, 29 U.S.C.A. § 1105,[4] by (1) participating in and/or concealing Sydnor's numerous breaches of fiduciary duty, (2) failing to take reasonable efforts to remedy Sydnor's numerous breaches, and (3) failing to fulfill its own fiduciary duties under 29 U.S.C.A. § 1104(a)(1). Count Three alleged ultra vires conduct by

McGraw. Count Four alleged breach of contract by McGraw. Pursuant to ERISA §§ 409 and 502, 29 U.S.C.A. §§ 1109 and 1132, respectively,[5] the amended complaint sought damages in the amount of $1,303,-623.50 plus unpaid dividends on behalf of the plaintiff class.

On July 21, 1998, the district court issued a Memorandum Opinion finding that Smith's claims for breach of fiduciary duties were merely a recasting of a claim for benefits, which requires exhaustion of internal remedies before a plaintiff can bring an ERISA action in federal court. Based upon this finding, the district court concluded that Smith's claims were premature and not reviewable. The district court also declined to consider Counts Three and Four, on the ground that they related directly to Smith's ERISA claims. Accordingly, the district court dismissed Smith's case without prejudice. In the accompanying Order, the district court also granted Smith's motion for leave to file an amended complaint. Smith filed a timely notice of appeal on August 20, 1998.

## II.

 Because this case is on appeal from a Rule 12(b)(6) dismissal, our review

---

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.
29 U.S.C.A. § 1106(a)-(b) (West 1999).

4. ERISA § 405(a) provides:
In addition to any liability for which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes rea-

sonable efforts under the circumstances to remedy the breach.
29 U.S.C.A. § 1105(a) (West 1999).

5. ERISA § 409(a) provides, in relevant part:
Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. 29 U.S.C.A. § 1109(a) (West 1999). ERISA § 502(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C.A. § 1132(a)(2) (West 1999).

is de novo. *See Mylan Lab., Inc. v. Mat-kari,* 7 F.3d 1130, 1134(4th Cir.1993). We will not affirm the district court's dismissal of Smith's amended complaint for failure to state a claim unless it appears certain that Smith can prove no set of facts that would support his claim and would entitle him to relief. *See id.* We accept as true all of Smith's well-pleaded allegations and view the amended complaint in the light most favorable to him. *See id.*

### III.

Smith argues that the district court's decision that his claims for breach of fiduciary duties by Sydnor and McGraw were merely are casting of a claim for benefits was erroneous because the allegations of self-dealing and imprudent conduct and underselling Plan assets for personal profit by Sydnor and McGraw clearly stated claims for breach of fiduciary duties. Smith further argues that claims for breach of fiduciary duties, as statutory claims, are not subject to the exhaustion requirement. In the alternative, Smith argues that even if his claims are construed as claims for benefits, exhaustion should be excused because it would be futile in light of the lack of procedures and remedies in the Plan to address claims for breach of fiduciary duties.

### A.

■■ The first issue we must address is whether the district court correctly characterized Smith's claims as a recasting of a claim for benefits that requires exhaustion of internal plan provisions before a plaintiff can bring suit in federal court. The parties do not dispute that this case is governed by ERISA. Although ERISA does not explicitly contain an exhaustion requirement, "an ERISA claimant general-ly is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132." *Makar v. Health Care Corp.,* 872 F.2d 80, 82 (4th Cir.1989). Requiring exhaustion of administrative remedies for such claims gives force to ERISA's explicit requirement that benefit plans covered by ERISA provide internal dispute resolution procedures for participants whose claims for benefits have been denied. *See id.* at 83. Exhaustion also "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.*

In its decision, the district court first took notice of the exhaustion requirement. The district court then noted that although Smith framed his suit in terms of breaches of fiduciary duties by Sydnor and McGraw, he sought to recover the difference between the $70 per share he received when he left his employment with McGraw and the $260.31 per share plus interest provided in the Articles of Incorporation for the fifty-eight shares of preferred stock owned by the ESOP and allocated to Smith's account in the ESOP. Relying on *Simmons v. Willcox,* 911 F.2d 1077 (5th Cir. 1990), and *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.1988), the district court construed Smith's claims for breach of fiduciary duties as a recasting of a claim for benefits and an attempt to circumvent the exhaustion requirement. Accordingly, the district court concluded that Smith's filing was premature because he had not yet availed himself of review procedures provided by the plan.[6]

---

6. As required by ERISA § 503, 29 U.S.C.A. § 1133 (West 1999), the 401(k) Plan contained a detailed procedure for a plan participant to file a claim with the plan administrator and either receive the benefits here quested or a detailed explanation of why his claim was denied. Any participant who was denied benefits was entitled to a formal hearing upon filing a request for a hearing with the plan administrator. The plan administrator was required to produce a final decision on the claim within sixty days of receipt of the appeal, absent special circumstances.

We now turn to the two main cases cited by the district court to determine whether they support the district court's conclusion that Smith's claims are an attempt to evade the exhaustion requirement. In *Drinkwater*, the plaintiff brought suit in federal court claiming that his employer had breached its fiduciary duty by denying him benefits under the more favorable terms of a new disability plan. *See Drinkwater*, 846 F.2d at 823–24. The First Circuit rejected Drinkwater's argument that his claim for past due benefits was based upon the violation of his statutory rights under ERISA and thus not subject to the exhaustion requirement. *See id.* at 826. The court concluded that Drinkwater's claim was "a simple contract claim artfully dressed in statutory clothing" and to allow him to proceed without exhausting review procedures provided by the plan would render meaningless the exhaustion requirement. *Id.*

In *Simmons*, the plaintiff argued that the defendants had breached their fiduciary duty by with holding information regarding the status of her benefits, and, therefore, exhaustion should not be required with regard to her claims for benefits and for breach of fiduciary duty. *See Simmons*, 911 F.2d at 1081. The Fifth Circuit rejected Simmons's allegation that the defendants withheld information regarding the status of her benefits and concluded that she had no cause of action for denial of benefits because she failed to exhaust her administrative remedies. *See id.* With regard to Simmons's claim for breach of fiduciary duty, which was also based upon the defendants' alleged withholding of information regarding her benefits, the court found the reasoning in *Drinkwater* to be persuasive and concluded that Simmons must exhaust her administrative remedies before bringing such a claim in federal court. *See id.; see also Weiner v. Klais & Co.*, 108 F.3d 86, 91 (6th Cir.1997) (citing *Drinkwater* in holding that plaintiff cannot get around exhaustion requirement by pleading a claim for breach of fiduciary duty where basis of claim is denial of benefits).

■ We interpret *Drinkwater* and *Simmons* to require a plaintiff to exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits. Under those circumstances, it is clear that such a claim is a naked attempt to circumvent the exhaustion requirement. This interpretation is consistent with our prior decision in *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712 (4th Cir.1996), where we considered whether a company had a cause of action under ERISA to seek reimbursement from an insurance company for medical expenses incurred by one of its employees. *See id.* at 713–14. We noted that although Coyne pleaded its claim as a breach of fiduciary duty, it in actuality sought benefits, for which it had no cause of action because the specific terms of ERISA § 502(a)(1)(B) limited a cause of action for benefits to participants and beneficiaries of the ERISA-regulated plan. *See id.* at 714. We concluded that "[t]o permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed *every* wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory." *Id.* In sum, *Drinkwater, Simmons*, and *Coyne & Delany* instruct us that a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*.

We find no such "artful pleading" in this case. In Smith's amended complaint, he alleges that Sydnor and McGraw failed to discharge their fiduciary duties with re-

gard to the 401(k) Plan as required by ERISA §§ 404 and 406 by selling the preferred stock at a grossly undervalued price and engaging in self-dealing conduct to the detriment of Plan participants and beneficiaries, by failing to act in a prudent manner in investigating the transaction with CNC, and by acting on behalf of an adverse party in a transaction with CNC. Smith also alleges that McGraw violated its co-fiduciary duties under ERISA § 405 by participating in, concealing, and failing to remedy Sydnor's numerous breaches of fiduciary duties. Unlike the plaintiffs in the above cases, Smith does not challenge a denial of benefits or an action related to a denial of benefits, but rather the *conduct* of Sydnor and McGraw that he claims has lowered the value of his and the other participants' 401(k) Plan accounts. Indeed, Smith has alleged a set off acts that, if proven, would constitute breaches of fiduciary duties by Sydnor and McGraw under ERISA independent of a claim for benefits. *See, e.g., Felber v. Estate of Regan,* 117 F.3d 1084, 1086–88 (8thCir.1997) (finding breach of fiduciary duties under ERISA §§ 404 and 406 where trustee of ERISA plan engaged in self-dealing and imprudent transactions); *Concha v. London,* 62 F.3d 1493, 1500–04(9th Cir.1995) (reversing district court dismissal of claims for breach of fiduciary duties under ERISA §§ 404 and 406 where plaintiffs alleged that fiduciaries of ERISA plan engaged in prohibited transactions, failed to discharge their duties in a prudent manner, and failed to diversify the assets of the plan); *Reich v. Compton,* 57 F.3d 270, 287–91 (3d Cir.1995) (reversing district court grant of summary judgment in favor of defendant trustees on claims for breach of fiduciary duties under ERISA §§ 404 and 406 where evidence suggested that trustees may have acted on behalf of an adverse party in a transaction with the plan and may have violated the duties of loyalty and prudence).

█ We find further support in Smith's amended complaint for our conclusion that he has pleaded valid claims for breach of fiduciary duties by Sydnor and McGraw. Under ERISA, damages for breach of fiduciary duty inure to the benefit of the plan as a whole rather than to individuals. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Smith's amended complaint states that Smith "brings this action on behalf of himself and all other members of the class defined herein *and on behalf of the James McGraw, Inc. 401(k) Plan.*" (J.A. at 134 (emphasis added).) As a remedy, Smith seeks, *inter alia,* that the district court order Sydnor and McGraw to disgorge all profits from the transaction with CNC and that it order the rescission of the sale of the preferred stock to McGraw and reinstate the 401(k) Plan's option to "put" the stock. This remedy is precisely what ERISA § 409 provides. Although this remedy will undoubtedly benefit Smith and other participants in the Plan, it does not solely benefit the individual participants. *See Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1417–18 (9th Cir. 1991) (finding a failure to state a claim by plaintiffs who claimed breach of fiduciary duty and sought annuities for individual plaintiffs, which would only benefit the plaintiffs and not the plan). In accordance with *Russell,* any recovery against Sydnor and McGraw must be paid to the Plan and not to individual participants.

In sum, because the resolution of Smith's claims rests upon the interpretation and application of ERISA rather than simply upon the interpretation and application of the 401(k) Plan, we conclude that Smith has pleaded valid claims for breach of fiduciary duties.

### B.

Having concluded that Smith's claims for breach of fiduciary duties are not a mere recasting of a claim for benefits, we now reach the issue not addressed by the district court—whether exhaustion of internal plan remedies is required before

Smith can file suit claiming breach of fiduciary duties in federal court. While the courts of appeals are in near unanimity that exhaustion of administrative remedies is required before a plaintiff can bring an ERISA action in federal court to recover benefits under a plan, *see Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 & n. 4 (6th Cir.1998) (listing cases), they are in sharp disagreement as to whether a plaintiff must exhaust administrative remedies before bringing an action in federal court to assert a violation of an ERISA statutory provision, such as a claim for breach of fiduciary duty. *Compare Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649–50 (7th Cir.1996) (holding that district court has discretion to require exhaustion for ERISA § 510 claim); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226–27 (11th Cir.1985) (holding that exhaustion is required for ERISA § 510 claim and claims for breach of fiduciary duties), *with Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950–51 (5th Cir.1995) (holding that exhaustion is not required for ERISA § 510 claim where plan is incapable of providing a remedy); *Richards v. General Motors Corp.*, 991 F.2d 1227, 1235 (6th Cir.1993) (holding that exhaustion is not required for ERISA § 510 claim); *Horan*, 947 F.2d at 1416 n. 1 ("The exhaustion requirement applies to plaintiffs' benefits claim, but does not apply to the plaintiffs' fiduciary breach claim because this claim alleges a violation of the statute, ERISA, rather than the Plan."); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1204–05 (10th Cir.1990)(holding that exhaustion is not required for ERISA § 510 claim); *Molnar v. Wibbelt*, 789 F.2d 244, 250 n. 3 (3d Cir.1986) (stating indicta that exhaustion is not required for claim for breach of fiduciary duty).[7]

■ The issue appears to be one of first impression in this Circuit.[8] For a number of reasons, we are persuaded that a plaintiff is not required to exhaust administrative remedies before bringing an action in federal court alleging a breach of fiduciary duty in violation of ERISA §§ 404–406. First, the exhaustion requirement is premised on ERISA's statutory mandate that benefit plans covered by the Act provide an internal review procedure for plan participants to appeal a denial of benefits. *See Makar*, 872 F.2d at 83 ("It would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized."). There is no statutory mandate for benefit plans to provide review of claims for violation of ERISA itself. *See Zipf v. AT & T Co.*, 799 F.2d 889, 891–92 (3d Cir.1986); *Amaro v. Continental Can Co.*, 724 F.2d 747, 751–52 (9th Cir.1984). This distinction is significant, as this Court has noted in dictum:

> It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. It follows, therefore, that if

---

7. Although the majority of these cases involve an alleged unlawful termination in violation of ERISA § 510, 29 U.S.C.A. § 1140, the reasoning of these cases applies equally to claims for breach of fiduciary duty, which are statutory claims as well. In fact, the district court noted that "Defendants do not challenge plaintiff's proposition that the exhaustion requirement applies only to benefit claims because fiduciary duty claims allege violations of the statute, ERISA, rather than a violation of an employee benefit plan." (J.A. at 131–32.)

8. The published opinions in this Circuit discuss the exhaustion requirement in the context of a denial of benefits. *See Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 716–17 (4th Cir.1996) (holding that fiduciaries cannot sue for benefits based in part upon fact that fiduciaries cannot file a claim for benefits, and, thus, cannot exhaust plan claim procedures); *Hickey v. Digital Equip. Corp.*, 43 F.3d 941, 945 (4thCir.1995) (holding that employees were required to exhaust administrative remedies before bringing suit for severance benefits).

there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies. *Licensed Div. Dist. No. 1 v. Defries,* 943 F.2d 474, 479 (4th Cir.1991) (citations omitted).

The very nature of a claim for a violation of an ERISA statutory provision further supports the conclusion that it is not subject to the exhaustion requirement. Unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary. *Cf. Makar,* 872 F.2d at 83 (noting the value of administrative review). As such, "one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent." *Zipf,* 799 F.2d at 893. "Indeed, there is a strong interest in judicial resolution of these [ERISA statutory] claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions." *Id.* (regarding an ERISA § 510

claim). Because no deference is due plan fiduciaries, the policy considerations cited in favor of the exhaustion requirement by this Court in *Makar*— enabling plan fiduciaries to manage their funds, correct their errors, interpret plan provisions, and assemble a factual record for a reviewing court—are simply not present in a claim for violation of an ERISA statutory provision.

■ In light of these considerations, we hold that the judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA.[9] That the language of the 401(k) Plan makes no provision for handling this type of claim is further support for not referring this type of claim to the Plan for administrative consideration. *See Defries,* 943 F.2d at 479 (noting that lack of procedures in plan for appeal of non-benefit issues is further evidence that appeals procedure required by ERISA does not apply to non-benefit challenges). Because Smith has pleaded valid claims for breach of fiduciary duties defined in §§ 404–406 of ERISA by Sydnor and McGraw, he is not required to exhaust internal plan provisions before bringing suit in federal court.[10]

9. We find further support for our holding by analogy to the standards for our review of actions of an ERISA plan fiduciary who has been given discretionary authority to determine eligibility for benefits and to interpret the language of an ERISA plan. In general, deference must be shown to such discretionary actions, which will be reviewed only for abuse of that discretion. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the fiduciary is acting under a conflict of interest, however, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Id.* at 115, 109 S.Ct. 948 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). This Court has formulated the weighing of the conflict-of-interest factor in the following manner:

> [W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the

merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Doe v. Group Hospitalization & Medical Servs.,* 3 F.3d 80, 87 (4th Cir.1993). By allowing a plaintiff to bring a claim for breach of fiduciary duty in federal court before exhausting administrative remedies, we recognize the general principle enunciated in *Doe* that we do not give full credence to an ERISA fiduciary's assessment of his own allegedly wrongful conduct.

10. Our conclusion means we need not decide whether exhaustion would be futile and thus could be excused. *See, e.g., Licensed Div. Dist. No. 1 v. Defries,* 943 F.2d 474, 479 (4th Cir.1991) (holding that exhaustion of administrative remedies would be futile where the

## IV.

In sum, we conclude that Smith's amended complaint alleges facts that, if proven, show that Sydnor and McGraw breached their fiduciary duties to the participants in the 401(k) Plan and that Smith is not required to exhaust internal plan provisions before bringing suit in federal court asserting violations of §§ 404–406 of ERISA. We therefore reverse the district court's dismissal of Smith's action and remand with the instruction to reinstate his amended complaint.

*REVERSED AND REMANDED*

plaintiff union sought a ruling that it had the authority to remove the incumbent trustees of the union benefit plan and appoint new ones).