**SUNTRUST BANK, Successor to Crestar Bank, Formerly Known as United Virginia Bank, Trustee Under Trust Agreement Date September 20, 1976 of Dr. Robert B. Seligman,**

and

**SunTrust Bank, Executor Under Will of Dr. Robert B. Seligman, Dated December 23, 1996, Plaintiffs.**

v.

**AETNA LIFE INSURANCE COMPANY, Aetna Life & Casualty, Aetna/U.S. Healthcare, Inc., Philip Morris USA, Inc., Altria Group, Inc., Philip Morris Companies, Inc., Philip Morris Group Life Insurance Plan, Defendants.**

No. CIV.A. 3:02CV863.

United States District Court,
E.D. Virginia,
Richmond Division.

March 17, 2003.

---

John R. Walk, Lisa Spickler Goodwin, Hirschler Fleischer PC, Richmond, VA, for plaintiffs.

Robert Barnes Delano, Jr., Sands, Anderson, Marks & Miller, Douglas Michael Palais, LeClair Ryan, Cameron Scott Matheson, LeClair Ryan, Richmond, VA, for defendants.

### MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on three Motions to Dismiss the Amended Complaint filed by Defendants Aetna Life Insurance Company and Aetna Health, Inc. (collectively, "the Aetna Defendants"), and Defendants Philip Morris USA, Inc., Altria Group, Inc., and Philip Morris Group Life Insurance Plan (collectively, "the Philip Morris Defendants"). For the reasons discussed herein, all motions filed by the Aetna Defendants and the Philip Morris Defendants are GRANTED.

I

The late Dr. Robert B. Seligman was employed with Philip Morris USA, Inc., formerly known as Philip Morris, Inc., as director of its Research and Development facility in Richmond, Virginia. As part of the Philip Morris Group Life Insurance Plan (the "Plan"), an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Dr. Seligman had an Aetna Group Life Insurance Policy (the "Policy"), in the amount of $146,256.95.[1]

Initially, Dr. Seligman entered into a trust agreement with Chemical Bank of New York on June 26, 1974. Dr. Seligman also executed an Assignment of Group Insurance form and a Change of Beneficiary form on June 26, 1974, which assigned the Policy to Chemical Bank, and made Chemical Bank the beneficiary of the Policy. However, as a result of his relocation from New York to Richmond, Dr. Seligman entered into another trust agreement with United Virginia Bank as trustee on September 20, 1976 ("the Trust"). The beneficiaries of the Trust are Dr. Seligman's two adult children, Barry Seligman and Carol Seligman. Dr. Seligman intended that the Policy, among other assets, be administered under the Trust. Consequently, Chemical Bank executed a Relinquishment of Assignment of Group Insurance on November 1, 1976.

Central to the controversy of this case is Dr. Seligman's efforts to assign the Policy to United Virginia Bank and to make the bank the beneficiary of the Policy. Upon receipt of Chemical Bank's Relinquishment, Aetna informed Philip Morris by letter dated November 9, 1976, that Dr. Seligman was able to assign the Policy to United Virginia Bank upon receipt of the

---

**1.** The insurance policy number was initially 56174. However, that policy was superseded by the current Policy, policy number GL–16723.

proper assignment forms. Accordingly, on November 10, 1976, Dr. Seligman completed the Assignment of Group Insurance form. The form included a Release by Assignee, completed by United Virginia Bank, and a Consent by Group Policyholder and Insurer, which was executed by Philip Morris and Aetna. However, Dr. Seligman did not complete a Change of Beneficiary form at that time.

On or about April 16, 1985, Dr. Seligman noticed a discrepancy in his beneficiary designation. As a result, he wrote an inter-office memorandum to Nora Sampsell, in which he stated that Chemical Bank should not be listed as the trustee of the June 26, 1974 trust agreement. Dr. Seligman explains:

> When I returned to Richmond, the trust agreement was reassigned to United Virginia Bank as of September 20, 1976.... Therefore, I have completed a Change of Beneficiary form indicating the United Virginia Bank as trustee. You will find that form enclosed with this memo..... Please make the necessary changes in my permanent record so that the beneficiary designation is updated and complete.

(Am.Compl., Ex. G.) Also written on the copy of the memorandum is a handwritten note by Dr. Seligman, in which he writes that "Nora Sampsell called saying the info[rmation] sent was incorrect. They do have the proper designation for trust agreement. RBS." (*Id.*) It is apparent that, up until this time, Dr. Seligman believed that he had taken all necessary steps to properly assign the Policy to United Virginia Bank and to make the Bank the beneficiary of the Policy, and neither Philip Morris nor Aetna informed him otherwise. As indicated in the memo to Nora Sampsell, Dr. Seligman completed a Change of Beneficiary form, dated April 15, 1985, which changed the beneficiary of the Policy to United Virginia Bank. How-

ever, Dr. Seligman's power to change the beneficiary terminated when Aetna received the Assignment of Group Insurance form at its home office on November 17, 1976.

Dr. Seligman died on October 18, 2000. SunTrust Bank, successor to Crestar Bank, formerly known as United Virginia Bank, qualified as executor of Dr. Seligman's estate. Pursuant to the Trust, the Plan, and the Policy, SunTrust Bank made a demand upon Aetna for the proceeds of the Policy. On March 21, 2001, Aetna responded by letter to SunTrust Bank's demand. This letter essentially stated that because there was no designated beneficiary of the Policy at the time of the assignment to United Virginia Bank, there was no beneficiary on file at the time of Dr. Seligman's death. As a result, the proceeds of the Policy were paid, pursuant to the terms of the Policy, to Dr. Seligman's widow, Shirlee A. Seligman.

Plaintiff SunTrust Bank as Trustee and Executor ("SunTrust"), has filed its Amended Complaint, which asserts several grounds of relief pursuant to ERISA against both the Aetna Defendants and the Philip Morris Defendants. Specifically, SunTrust asserts benefits claims pursuant to 29 U.S.C. § 1132(a)(1)(B) (Counts I and II), breach of fiduciary duty pursuant to 29 U.S.C. §§ 1109, 1132(a)(2) (Counts III and IV), injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) (Counts V and VI), and equitable estoppel pursuant to 29 U.S.C. § 1132(a)(3) (Counts VII and VIII), against both the Aetna and Philip Morris Defendants. The Defendants now move this Court to Dismiss SunTrust's Amended Complaint.

## II

The function of a motion to dismiss is to test the law governing claims, not the facts which support them. *See Conley v. Gib-*

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Spell v. McDaniel,* 591 F.Supp. 1090 (E.D.N.C.1984). When considering such a motion, the Court must presume that all factual allegations in the complaint are true. *See Puerto Rico ex. rel. Quiros v. Alfred L. Snapp & Sons,* 632 F.2d 365 (4th Cir.1980). All reasonable inferences must be made in favor of the non-moving party. *See Johnson v. Mueller,* 415 F.2d 354 (4th Cir.1969); *MacKethan v. Peat, Marwick, Mitchell & Co.,* 439 F.Supp. 1090 (E.D.Va.1977). The Court should not dismiss any count unless it appears beyond a doubt that the nonmoving party could not recover under any set of facts which could be proven. *See Doby v. Safeway Stores, Inc.,* 523 F.Supp. 1162 (E.D.Va.1981); *Austin v. Reynolds Metals Co.,* 327 F.Supp. 1145 (E.D.Va.1970).

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), not only will the court consider the facts as set forth in the complaint, but the court will also consider the documents attached to the complaint, *In re The First Union Corp. Sec. Litig.,* 128 F.Supp.2d 871, 883 (W.D.N.C.2001), and matters of public record whose authenticity is unquestioned, *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 282 (E.D.Va.1995). "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner,* 162 F.R.D. at 282. The authenticity of such documents must be unquestioned. *Id.*

### III

The Aetna Defendants and Philip Morris Defendants both launch a host of attacks against SunTrust's Amended Complaint. Each argument will be addressed separately.

### A. Exhaustion of Administrative Remedies

■ The Philip Morris Defendants argue that the SunTrust failed to exhaust their administrative remedies as provided by the Plan. The Plan establishes an administrative procedure for reviewing a denial of a claim:

> Within 60 days after receiving the notice of denial, your beneficiary (or a duly authorized representative) may write to the insurance company to request a full and fair review of the denial. He or she will be entitled to review pertinent documents, and submit issues and comments in writing. All such requests should be submitted to the person responsible for Group Life Insurance in the Human Resources or Employee Relations Department for forwarding to the Aetna Life Insurance Company . . . .

(Am. Compl., Ex. A, at 6.) ERISA requires that all employee benefit plans have an internal review procedure for denial of benefits. 29 U.S.C. § 1133. Accordingly, although ERISA does not have an explicit provision that requires the exhaustion of administrative procedures, the Fourth Circuit has held that "an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132." *Makar v. Health Care Corp.,* 872 F.2d 80, 82 (4th Cir.1989).

■ The exhaustion of administrative remedies is expressly directed towards the denial of benefits under 29 U.S.C. § 1132, and not a claim of breach of fiduciary duty. *Smith v. Sydnor,* 184 F.3d 356, 357 (4th Cir.1999). However, the Philip Morris Defendants argue that, because all of SunTrust's other causes of action are simply a recasting of a claim for benefits, that they should be dismissed as well. The Fourth

Circuit has held that "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA.*" *Smith,* 184 F.3d at 362. In *Smith,* the Fourth Circuit discussed cases from other courts, all of which were cited as support by the Philip Morris Defendants, that provide examples of what it termed "artful pleading." For example, in *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988), the First Circuit held that the plaintiff would not be allowed to recast a contract claim into a claim for a violation of his statutory rights under ERISA to avoid the exhaustion requirement. Similarly, in *Simmons v. Willcox,* 911 F.2d, 1077, 1081 (5th Cir.1990), the Fifth Circuit held that the plaintiff could not recast his claim for benefits as a breach of fiduciary duty for denial of access to information.

The Fourth Circuit interpreted these two cases to stand for the proposition that plaintiffs must exhaust administrative remedies for all claims where the basis for such claims is the denial of benefits or an action by the defendant that is closely related to a denial of benefits. *Smith,* 184 F.3d at 362. The Fourth Circuit noted that this interpretation is consistent with an earlier case it decided where it held that the plaintiff's claim of breach of fiduciary duty was actually a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), when plaintiff sought reimbursement of medical expenses. *Id.* (discussing *Coyne & Delany Co. v. Blue Cross & Blue Shield,* 102 F.3d 712, 713–14 (4th Cir.1996)).

SunTrust argues that this rule does not apply to its other causes of action for equitable relief. SunTrust asserts that the injunction is for the specific purpose of requiring the Defendants to recognize SunTrust as the owner and/or beneficiary under the Policy. SunTrust further asserts that the claim of equitable estoppel seeks to prevent Defendants from denying the validity, sufficiency, and effectiveness of the Assignment and/or Change of Beneficiary forms and failing to recognize SunTrust as the rightful owner and/or beneficiary of the Policy. These claims, however, are inextricably linked to the claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Not only are the claims for equitable relief closely related to the claims for benefits, SunTrust's Amended Complaint on its face indicates that the only relief sought under the injunctive relief and equitable estoppel claims is the Policy proceeds. SunTrust cannot persuasively argue that these claims are not "artfully pled" claims for benefits.

■ SunTrust, however, also argues that the exhaustion requirement has no impact on its claims for the following reasons: (1) the internal review procedure provided by the Plan was not mandatory; (2) Aetna's March 21, 2001 letter conveying the denial of benefits was defective; (3) initiating the claim review would be futile; and (4) SunTrust's actions upon receipt of the March 21, 2001 letter were sufficient to exhaust their administrative remedies. SunTrust's first argument is without merit. SunTrust attempts to argue that, because the Plan states that upon denial, the participant's legal representative *may* write to the insurance company to initiate a review of the denial, it is not mandatory to follow this step. As noted by the Philip Morris Defendants, this argument makes little sense. While this review process is optional under the Plan, should a beneficiary or legal representative opt to file suit in federal court based on the denial of benefits, this provision becomes mandatory under law.

■ SunTrust's second and third arguments implicate two of the exceptions to

the exhaustion rule that courts have applied—wrongful denial of meaningful access to the administrative procedures, and futility. *See DePina v. General Dynamics Corp.*, 674 F.Supp. 46, 49 (D.Mass.1987). Meaningful access requires that, upon denial of a claim, the administrator must:

> [P]rovide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503–1(f)(1), (g)(1) (2003). Courts have recognized the importance in adhering to this regulation to provide meaningful access to administrative review procedures. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) (noting that notice requirement for denial of benefits must be explicit); *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 417 (D.C.Cir.2000) (noting that insurance company must substantially comply with notice regulations). Thus, it is necessary to determine whether the March 21, 2001 letter was explicit and substantially complied with the notice requirement. *See Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir.1997). To that end, the *Brehmer* decision determined that, whether the administrator substantially complied with the notice requirement turned on whether the administrator provided a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the denial of benefits. *Id.*

The Philip Morris Defendants argue that the March 21, 2001 letter substantially complied with the notice requirement because the letter explains why SunTrust's claim was denied and provides the address and the telephone number of the Aetna claims examiner. The Plan's description of the type of information a beneficiary or legal representative would receive upon the denial of benefits mirrors the federal regulation. Specifically, the Plan states that:

> If a claim for Group Life Insurance benefits is denied, the insurance company will write to your beneficiary or legal representative within 90 days after receipt of the claim to explain the reasons for the denial. This notice will refer to the specific contract provision on which the denial is based; it will describe any additional material or information that may be necessary for the claim to be processed; it will explain why such material or information is necessary, and it will explain the Plan's claim review procedures.

(Am. Compl., Ex. A, at 8.) It is not readily apparent that the March 21, 2001 letter substantially complies with the notice requirement. The letter does not refer to the specific contract provision, it does not describe any additional material that may be necessary to process the claim, and it does not explain the Plan's claim review procedure. (Am.Compl., Ex. J.) Notifying SunTrust as to the specific contract provision regarding assignment and the changing of beneficiaries would have provided a sufficiently clear understanding as to why the benefits were denied, especially consid-

ering the fact that SunTrust believed that it was the beneficiary of the Policy. Furthermore, the Philip Morris Defendants cannot reasonably suggest that the provision of the claim examiner's phone number to answer any further questions SunTrust may have is equivalent to an explanation of the Plan's claim review procedures. Accordingly, the March 21, 2001 denial of benefits letter did not substantially comply with the notice requirement, and SunTrust is excused from the administrative exhaustion requirement.[2]

### B. Breach of Fiduciary Duty

■ SunTrust's claims for breach of fiduciary duty under ERISA § 502(a)(2) fail to state a claim. It is well established that, to advance a claim of breach of fiduciary duty pursuant to Section § 502(a)(2) of ERISA, the plaintiff must assert recovery for the employee benefit plan as a whole, as opposed to individual relief. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Coyne*, 102 F.3d at 714. The purpose of providing a cause of action for breach of fiduciary duty was to address the concern of "misuse and mismanagement of plan assets by plan administrators." *Russell*, 473 U.S. at 140, 105 S.Ct. 3085. Thus, more appropriate actions under ERISA § 502(a)(2) include selling preferred stock at a grossly undervalued price to the detriment of the employee benefit plan, and selling plan assets to an interested party. *See Smith*, 184 F.3d at 359–60. SunTrust effectively concedes that this claim is not appropriately before this Court. Accordingly, Counts III and IV will be dismissed for failure to state a claim.

### C. Injunctive Relief and Equitable Estoppel

■ Both the Aetna Defendants and the Philip Morris Defendants made numerous arguments that SunTrust's injunctive relief and equitable estoppel claims pursuant to ERISA § 502(a)(3) should be dismissed. First, the Philip Morris Defendants argue that SunTrust's equitable relief claims are time-barred. Next, the Defendants essentially argue that SunTrust cannot assert any claim for equitable relief under ERISA § 502(a)(3), where the claims seek monetary relief, and where SunTrust has another adequate remedy. Finally, the Aetna Defendants argue that a claim for equitable relief under ERISA § 502(a)(3) cannot rewrite the Plan.

The Philip Morris Defendants' first argument is not persuasive. Pursuant to Section 413 of ERISA:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> > (1) six years after (A) the date of the last action which constituted part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation . . . .

29 U.S.C. § 1113. SunTrust asserts that all the Defendants breached their fiduciary duty by failing to inform Dr. Seligman that the Assignment of Group Insurance form was insufficient to make it the beneficiary of the Policy, and that the Change in Beneficiary form, completed on April 15, 1985, was not effective. SunTrust further asserts that this breach could have been cured up until Dr. Seligman's death on

---

**2.** It is not necessary to reach the futility issue or the merits of Plaintiff's fourth argument because the exhaustion of administrative remedies requirement does not apply in this case based on the meaningful access exception alone.

October 18, 2000. The Philip Morris Defendants argue that the latest date that this breach could have been cured was any date prior to November 17, 1976, which was the day that the assignment to United Virginia Bank became effective. The Philip Morris Defendants misconstrue SunTrust's argument. SunTrust is arguing that the omission was not by Dr. Seligman, but by the Defendants in failing to inform either Dr. Seligman or SunTrust that there was no designated beneficiary. Assuming, only for the purposes of this discussion, that this act constitutes a breach of fiduciary duty, the latest date that it could have been cured was the day before Dr. Seligman's death. The Defendants could have informed Dr. Seligman, as the participant of the Plan, or SunTrust, as the assignee of the Policy, that the Assignment of Group Insurance form was insufficient to designate a change in beneficiary. The Defendants could have also informed Dr. Seligman or SunTrust that the Change in Beneficiary form subsequently completed by Dr. Seligman in April 1985, in an effort to correct the designated beneficiary, was not effective because Dr. Seligman no longer had the power to designate a beneficiary. These actions could have occurred before Dr. Seligman's death, and arguably could have occurred after his death since, as the Defendants argue, only SunTrust had the power to designate a beneficiary. Accordingly, SunTrust's ERISA § 503(a)(3) claims for equitable relief are not time-barred.

■ However, SunTrust cannot assert ERISA § 503(a)(3) claims for equitable relief where SunTrust seeks monetary damages while it has an adequate basis for relief elsewhere. There is no question that, unlike claims under ERISA § 502(a)(2), individual claimants can seek equitable relief under ERISA § 502(a)(3).

*Varity Corp. v. Howe,* 516 U.S. 489, 510, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). The *Varity* decision also recognized that such claims are proper for the purposes of "offering appropriate equitable relief for injuries caused by violations that ERISA § 502 does not elsewhere adequately remedy." *Id.* at 512, 116 S.Ct. 1065. The Court further explains that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S.Ct. 1065. The Fourth Circuit has also held that equitable relief under ERISA § 502(a)(3) is not "appropriate" where another adequate remedy exists under ERISA § 502(a). *See Coyne,* 102 F.3d at 716.

While SunTrust argues that it asserts claims of equitable relief under ERISA § 502(a)(3) in the alternative if it cannot prevail on its claim for benefits under ERISA § 502(a)(1)(B), SunTrust cannot escape the fact that its claims for equitable relief are essentially "artfully pled" claims for benefits. Therefore, Counts V through VIII will be dismissed.[3]

*D. Benefits Claim Under 29 U.S.C. § 1132(a)(1)(B)*

■ The Aetna Defendants and the Philip Morris Defendants both argue that SunTrust's benefits claims should be dismissed for failure to state a claim. The Aetna Defendants first argue that a claim for benefits under ERISA § 502(a)(1)(B) can only be brought against the plan itself. While some courts have held that a claim for benefits under ERISA § 502(a)(1)(B) can only be brought against the plan, *see Everhart v. Allmerica Financial Life Ins.,* 275 F.3d 751, 753 (9th Cir.2001); *Jass v. Prudential Health Care Plan, Inc.,* 88

---

**3.** It is not necessary for this Court to reach the Aetna Defendants' estoppel argument be- cause SunTrust has an adequate remedy elsewhere.

F.3d 1482, 1490 (7th Cir.1996); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985), other courts have held that such claims can also be brought against plan administrators, *see Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir.1998); *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988). The Fourth Circuit has not published a decision that expressly holds whether a claim for benefits under ERISA § 502(a)(1)(B) can be brought against the plan itself only or both the plan and the plan administrator. However, in an unpublished opinion, the Fourth Circuit reversed the district court's decision to grant the claimant leave to amend his complaint because the additional party had no control over the administration of the employee benefit plan. *Gluth v. Wal–Mart Stores, Inc.*, No. 96–1307, 1997 WL 368625, at *6 (4th Cir. July 3, 1997) (citing *Gelardi*, 761 F.2d at 1324–25).

Although it is not clear at this point which rule the Fourth Circuit will adopt, it does not appear that any of the Aetna Defendants are properly joined in this suit under either rule. It is clear that none of the Aetna Defendants are the Plan. It is equally clear that none of the Aetna Defendants is the plan administrator as defined by ERISA.[4] The express terms of the Plan state that the plan administrator is the Corporate Employee Benefit Committee of Philip Morris Companies, Inc. (Am. Compl., Ex. A, at 9.)[5] Therefore, none of the Aetna Defendants are properly joined in this suit. Furthermore, for the

same reason, the only defendants that should be named in this suit are the Philip Morris Group Life Insurance Plan and Altria Group, Inc.

■ Next, the Defendants argue that neither Dr. Seligman nor SunTrust substantially complied with the Plan or Policy requirements to properly change the beneficiary of the Policy to SunTrust because they did not complete the necessary form to do so. Because this is a motion to dismiss, the proper question here is, taking all facts asserted by SunTrust to be true, whether Dr. Seligman or SunTrust substantially complied with the change in beneficiary requirements.

■ ERISA is silent as to any provisions regarding the change in beneficiaries. However, where ERISA is silent, federal common law applies. *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 562 (4th Cir.1994). The *Phoenix Mutual* court determined that, pursuant to federal common law, to establish substantial compliance, the plaintiff must demonstrate that the insured: "(1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Id.* at 564. Substantial compliance is less than actual compliance, and as such, the purpose of this rule is to give effect to the insured's intent when that intent is clear. *Id.* at 565.

SunTrust argues that Dr. Seligman's actions constituted substantial compliance. SunTrust asserts that, to evidence his desire that the Policy proceeds be made payable to the Trust after his death, Dr. Seligman prepared a Relinquishment of

---

4. An "administrator," under ERISA is "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." 29 U.S.C. § 1002(16)(A)(i).

5. Philip Morris Companies, Inc. is now known as Altria Group, Inc.

Assignment form to be completed by Chemical Bank, as instructed by Aetna and the Human Resources Office at Philip Morris. SunTrust also asserts that, pursuant to Aetna instructions and the provisions of the Plan and the Policy, Dr. Seligman completed the Assignment of Group Insurance form. SunTrust also argues that the executed Trust agreement evidenced his intent that the Policy proceeds be made payable to the Trust. The Trust agreement is referred to in the Assignment of Group Insurance form. Finally, SunTrust points to Dr. Seligman's actions in April 1985 when he discovered that the designated beneficiary was incorrect.

It is arguable that Dr. Seligman's actions evidenced an intent that SunTrust be the designated beneficiary of the Policy. However, even if these actions evidence such an intent, these actions are not "similar to the action required by the change of beneficiary provisions of the policy." According to the terms of the Plan, in order to change the beneficiary, the participant must contact his or her "Human Resources or Employee Relations Department and complet[e] the necessary form." (Am. Compl., Ex. A, at 3.) The Policy states that, to change the designation of the beneficiary, the employee may do so "by written request filed at the headquarters of the Policyholder or at the Home Office of the Insurance Company." (Am. Compl., Ex. B, at 12.)

Although Dr. Seligman completed two different forms and contacted Aetna, it does not necessarily follow that these acts constitute substantial compliance. For example, in *Steamship Trade Ass'n Int'l Longshoremen's Ass'n, (AFL–CIO) Benefits Trust Fund, (AFL–CIO) v. Bowman,* 247 F.3d 181, 184 n. * (4th Cir.2001), the court held that the decedent employee's completion of a form for death benefits, which named his wife as beneficiary, was not substantial compliance such that it

would change the beneficiary of the employee's life insurance policy to his wife. In that case, it was necessary for the employee to complete a Change of Beneficiary form to change the beneficiary of his life insurance policy. *Id.* at 183. Effectively, the court held that substantial compliance cannot be shown through the execution of one form that has a completely different function than the appropriate form. On the other hand, in *Phoenix Mutual,* the Fourth Circuit determined that the decedent employee substantially complied with the requirements to change the designated beneficiary to his wife where he submitted the correct, albeit incomplete, form, and followed-up with the insurance company's home office, who failed to implement the change. 30 F.3d at 564–65.

Neither the Relinquishment of Assignment form nor the Assignment of Group Insurance form indicated that Dr. Seligman was attempting to change the beneficiary of the Policy to SunTrust. These forms are insufficient to provide notice to the Aetna Defendants or the Philip Morris Defendants that Dr. Seligman wished to change his beneficiary. In addition, the express terms of the Assignment of Group Insurance form indicates that "[i]f th[e] assignment is made to the assignee as trustee, ... neither the Group Policyholder nor the Insurer shall be obliged to inquire into the terms of such trust, ... and they shall not be chargeable with knowledge of the terms of the trust." (Am.Compl., Ex. F.) Finally, Dr. Seligman's actions in April 1985 are of no significance to the determination of his substantial compliance because there is no question that Dr. Seligman had no power to change the beneficiary of the Policy at that time. Therefore, none these acts, nor any contact with the Defendants regarding the assignment of his policy are sufficiently similar to the completion of a Change in Beneficiary form to constitute substantial compliance.

 The Defendants finally argue that SunTrust, which possessed the sole authority to change the beneficiary of the Policy, did not substantially comply with the requirements of the Policy. SunTrust argues that neither the Policy nor the Assignment of Group Insurance form indicate that an assignment transfers all the rights and interests under the Policy. While SunTrust is correct in its assertion that the Policy contains no such language, it cannot reasonably assert that the Assignment of Group Insurance form does not contain any language regarding the assignment of all rights under the Policy. That form plainly states that the assignee has the right to designate and to change the beneficiary as provided in the Policy. SunTrust argues that because this form states in certain instances that the some of the assignee's rights are "sole and exclusive," but the right to designate and change beneficiaries is not designated as "sole and exclusive," that both the employee and the assignee retain the right to change the beneficiary. SunTrust's argument reflects a narrow reading of the Assignment of Group Insurance form. The paragraph which discusses the right to designate and change the beneficiary begins by stating that the terms of that paragraph are not to limit the generality of the foregoing language of the form. That foregoing language includes the express provision that Dr. Seligman assigns to the assignee, "all [his] incidents of ownership, including but not limited to all [his] right, title, claim, interest, and benefit, present or future, in and to my insurance ...." (Am.Compl., Ex. F.)

Thus, on November 17, 1976, the day that the assignment became effective, Dr. Seligman no longer had any power to change the beneficiary of the Policy. SunTrust was the only entity that possessed this power. SunTrust took no action whatsoever to make itself the beneficiary of the Policy. As a result, at the time of Dr.

Seligman's death, no beneficiary was designated. Thus, as provided by the terms of the Policy, the proceeds of the benefits were paid to Shirlee Seligman, Dr. Seligman's widow. Therefore, SunTrust cannot state a claim for benefits under ERISA § 502(a)(1)(B) against either the Philip Morris Group Life Insurance Plan or Altria Group, Inc., and Counts I and II of the Amended Complaint will be dismissed.

### IV

For the reasons stated herein, all Motions to Dismiss filed by the Aetna Defendants and the Philip Morris Defendants are GRANTED, and this case will be DISMISSED in its entirety, with prejudice.

An appropriate Order shall issue.