Debra HARROW, Administrator of the Estate of Stanley Harrow, on behalf of himself and all others similarly situated, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA; John Does No. 1–10, individually and in their fiduciary capacities as Plan Administrators of the Prudential HealthCare Plans, Defendants.

No. CIV. A. 98–2464 (JWB).

United States District Court, D. New Jersey.

Dec. 23, 1999.

Abrahams, Lowenstein, Bushman & Kauffman by Mark E. Squires, Cherry Hill, NJ, Chimicles & Tikellis by Michael D. Gottsch, Ramona Mariani, Haverford, PA, Kenneth A. Jacobsen, Media, PA, for Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker by James Crawford Orr, Newark, NJ, for Defendant.

## OPINION

BISSELL, District Judge.

This matter is before this Court on a motion for summary judgment by defendant, Prudential Insurance Company of America ("Prudential"). Prudential ar-

gues that the plaintiff's decedent, Stanley Harrow, failed to exhaust his administrative remedies prior to instituting this lawsuit. Plaintiff filed this class action Complaint on May 21, 1998. The two-count Complaint alleges wrongful denial of benefits in violation of 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and breach of fiduciary duty in violation of 29 U.S.C. § 1104(a).

The defendant filed a motion to dismiss for failure to exhaust administrative remedies returnable January 25, 1999. That motion was denied by this Court without prejudice. Plaintiff also filed a motion for class certification on May 21, 1998 pursuant to Fed.R.Civ.P. 23(a) and 23(b)(1), (2) and (3). This motion was adjourned without date in order for discovery to be undertaken. Plaintiff filed a renewed motion for class certification on June 10, 1999, and the parties then engaged in a discussion with this Court regarding whether summary judgment on the issue of exhaustion of administrative remedies should precede class certification. This Court finds that it does.

The original named plaintiff in this action, Stanley Harrow, passed away on June 25, 1999. The plaintiff's motion to substitute Debra Harrow, Administrator of the Estate of Stanley Harrow, as the named plaintiff in this action was granted by this Court on October 28, 1999. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTS

Mr. Harrow was an insured under the Prudential HealthCare HMO Plan (the "Plan"). (Compl., ¶ 14; Plaintiff's Exh. E, Response 1 ). Mr. Harrow's estate seeks to represent the following class:

all persons covered by a Prudential insurance plan or policy under an employee welfare benefit plan who have (i) been diagnosed by a physician as being either organically, structurally, or psy-

chologically impotent; (ii) have had Viagra prescribed by a physician for their impotence; and (iii) have been denied insurance coverage for all or a portion of their Viagra prescription. (Compl., ¶ 26). The Complaint alleges that Mr. Harrow filled a prescription for the drug Viagra at a pharmacy on April 21, 1998 and that Prudential has illegally denied him insurance coverage. (Id., ¶ 18). The Harrows paid cash for the prescription. (Id.)

The Prudential HealthCare HMO Plan includes a review procedure which provides for an initial complaint, then a two-step grievance procedure, and finally appeal to the Pennsylvania Department of Health. (Orr Cert., Exh. A). Mr. Harrow and his wife called Prudential's claims department after his pharmacy informed them of the rejection of coverage for their Viagra pills. (Harrow Dep. at 52). The Harrows were told that Prudential did not cover the cost of the pills because it was a new drug. (Id., at 53). They were also informed that they should keep the receipt for their pills, because they could be reimbursed for the cost if Prudential ever approved it. (Id.) The Harrows did not pursue any action beyond this initial inquiry to Prudential. (Id. at 54). They never re-filled the prescription for Viagra. (Id. at 53).

In June 1998, Prudential made public statements that it would not cover Viagra. (Cave Dep. at 93). Dr. Lisa Head and Anthony Kotin have been deposed on the issue of Prudential's appeals process. (Defendant's Exhs. C, D). At Dr. Head's deposition, she stated that the fact that Prudential's policy was to deny coverage of Viagra would not mean that all appeals would be automatically denied.

Q: Under those circumstances, would you expect any appeal to be successful?

A: I would expect that the appeal would go through the process that we've outlined in previous testimony and that they would be given a fair assessment of the information available by that committee. . . . I would expect that it would go through the process. I don't know that that would be upheld in every circumstance.

(Head Dep. at 62, 63, Defendant's Exh. C). However, there is evidence from internal e-mails within Prudential that perhaps the policy was more uniform than suggested by Dr.'s Head and Kotin. For example, one e-mail message stated "I'm carboning others just to ensure that we are clear that there is no local authority to approve coverage for Viagra even on a single case exception basis or for a specific claimant." (Gottsch Decl., Exh. I). Finally, there is no evidence that any formal appeal from a denial of Viagra coverage was ever taken by any person who might arguably be a class member.

## ANALYSIS

### I. Standard

Federal Rules of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir.1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment:

[t]he judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (*Id.*)

In order to survive a motion for summary judgment, a plaintiff must present "more than a mere scintilla of evidence" in his favor. (*Id.*) He "cannot simply reallege factually unsupported allegations contained in his pleadings." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; see also *Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir.1994). Only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient foundation must be excluded from consideration. *See Blackburn v. United Parcel Service, Inc.,* 179 F.3d 81 (3d Cir.1999).

## II. Application

This Court finds that defendant's motion for summary judgment should be decided prior to plaintiff's motion for class certification. This Court should not entertain ERISA claims "for payment of benefits unless the plaintiff has exhausted his remedies under the plan." *Canale v. Yegen,* 782 F.Supp. 963, 970–71 (D.N.J.1992). Therefore, the issue of exhaustion must be decided prior to any further steps being taken in this case.

### A. Plaintiff's Complaint is Dismissed for Failure to Exhaust Administrative Remedies.

Plaintiff's claim for wrongful denial of benefits is based upon § 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B). This section provides that:

[a] civil action may be brought (1) by a participant or beneficiary—(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; 29 U.S.C. § 1132(a)(1)(B).

■ Except in limited circumstances, a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir.1990), *aff'd in part, rev'd in part,* 896 F.2d 793 (3d Cir.1990), *on remand* 739 F.Supp. 972 (E.D.Pa.1990); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3d Cir.1984); *Zipf v. American Tel. & Tel.,* 799 F.2d 889, 891 (3d Cir.1986).

■ In the instant case, the plaintiff has not exhausted the administrative remedies available under Prudential's policy. The Prudential HealthCare HMO Plan includes a review procedure which provides for an initial complaint, then a two-step grievance procedure, and finally appeal to the Pennsylvania Department of Health. (Orr Cert., Exh. A). ·Mr. Harrow and his wife called Prudential's claims department upon being informed by their pharmacy of Prudential's rejection of coverage for the Viagra pills. (Harrow Dep. at 52). The Harrows were told that Prudential did not cover the cost of the pills because it was a new drug. (*Id.* at 53). They were also informed that they should keep the receipt for their pills, because they could be reimbursed for the cost if Prudential ever approved it. (*Id.*) The Harrows did not pursue any action beyond this initial inquiry to Prudential. (*Id.* at 54). Making one step which could be construed as an initial com-

plaint does not constitute exhaustion of all remedies, particularly when the Plan includes a concrete description of the appeal process available.

■ The plaintiff argues, however, that he was excused from exhaustion of the available administrative remedies because such an effort would have been futile. This is a recognized exception to the exhaustion requirement in an appropriate case. *Metz v. United Counties Bancorp*, 61 F.Supp.2d 364, 383 (D.N.J.1999); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir.1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

However, in the Third Circuit, proof of futility is a very high threshold for a plaintiff to meet. "In order to merit waiver of the exhaustion requirement a claimant must provide not merely bare allegations of futility, but a clear and positive showing of futility." *Canale*, 782 F.Supp. at 972 (defendant employer offered plaintiff $17,-182.01 in settlement on the claim under the Plan, and court found that did not render further application for benefits futile) (citing *Makar v. Health Care Corporation of the Mid–Atlantic*, 872 F.2d 80, 83 (4th Cir.1989)).

In *Berger*, employees of a steel company brought a suit against their former employer under ERISA. *Berger*, 911 F.2d at 913. The defendants moved for summary judgment for failure to exhaust administrative remedies and the plaintiffs argued futility. The Court found that three of the employees had exhausted their remedies, while a fourth had not. The Court stated that the three employees "made their desire for [the employment benefit] plain to the responsible company officials, that the company had adopted a policy of denying all applications for [the employment benefit], and that the employer had failed to

comply with the Plan's administrative procedures." (*Id.* at 917).

In *Metz*, a District of New Jersey case decided this year, the plaintiffs argued that their lack of exhaustion was excused because the employer made it clear that any attempt would be futile. *Metz*, 61 F.Supp.2d at 383. The plaintiffs produced a letter written by their employer which told them they would not be eligible for enhanced benefits and "filing such an application would be in vain." (*Id.*) Moreover, the employer sent an additional letter to each of the employees stating that the benefits were denied because the employer was following policies in a merger agreement which did not allow the benefits in question. (*Id.*) The plaintiffs argued that this was further evidence that an attempt to follow any internal procedures would be in vain.

Judge Walls of this Court disagreed, finding that futility had not been established. (*Id.*) The *Metz* court relied heavily on *Berger* in its analysis. The Court found that in *Berger*, the employees had been notified that as of a certain date, the benefits at issue would be eliminated. (*Id.*; *Berger*, 911 F.2d at 914–15). Also, the plaintiffs were told by the employer that they would not receive the benefit which they sought. *Berger*, 911 F.2d at 914, 915. However, the court still rejected the futility analysis and barred the fourth plaintiff's claim because he never sought the benefit. (*Id.* at 917). The *Metz* court agreed with the *Berger* court and found that the correspondence received by the plaintiffs from their employer did not excuse their failure to exhaust administrative remedies before bringing an action. *Metz*, 61 F.Supp.2d at 384.

Many other cases cited by plaintiff involved *denials* of a claim of futility and dismissals for lack of exhaustion of remedies.[1] These cases do not involve as

---

1. The plaintiff cites: *Kimble v. International Brotherhood of Teamsters, Teamsters Health and Welfare Fund of Philadelphia and Vicinity,* 826 F.Supp. 945 (E.D.Pa.1993) (Defen-

dant's motion for summary judgment was granted for failure to exhaust remedies and court found that denial letter was not clear enough to establish that appeal was futile);

strong an argument for futility as Mr. Harrow's claim, but they represent this Circuit's unwillingness to excuse the exhaustion requirement. In *Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund,* the courts found that the defendants had not met their obligations, since the denial letter was "deficient as a matter of law." *Tomczyscyn,* 590 F.Supp. 211, 214 (E.D.Pa.1984). However, the court still found that the plaintiff was required to exhaust all other remedies. (*Id.* at 217).

Other cases relied upon by plaintiff are distinguishable on the facts from the case at issue. In *Marsh v. Crucible Inc.,* the court held that although the plaintiffs had not complied with the procedures, and although it would not have been futile, the court wished to decide the substantive issues. 783 F.Supp. 938, 942 (W.D.Pa.1992), *aff'd,* 977 F.2d 568 (3d Cir.1992). The court based its decision on the fact that the plan reviewed and rejected a hypothetical claim identical to the one at issue, and because the defendants requested summary judgment on the issue that the plaintiffs "have received and are receiving, all benefits to which they are entitled...." (*Id.* at 942). In the instant case, Prudential has not reviewed and rejected a similar hypothetical claim. In fact, it is Prudential's position that each claim would be reviewed individually and, potentially, a claim for Viagra could be approved. (*See* Head Dep. at 62, 63, Defendant's Exh. C).[2]

In another case relied upon by the plaintiff, *Sell v. Nobel Education Dynamics, Inc.,* the court found that plaintiff's resort to administrative remedies would have been futile. 1994 WL 502544, 21 (E.D.Pa. 1994), *aff'd,* 60 F.3d 817 (3d Cir.1995). In that case, plaintiffs were appealing their termination, and the court found that evidence that the Board and the Plan Administrator voted in favor of their termination was enough to demonstrate futility of review. *Sell,* however, is not consistent with the recent decisions in this District. Indeed, while acknowledging the Third Circuit's requirement of a clear and positive showing of futility, the *Sell* court applied a different standard:

> Based on these facts, the Court finds that the plaintiffs reasonably concluded that resorting to the Plan's administrative procedures set forth in the Plan would have been futile and, therefore, it holds that their claims are not barred by their failure to exhaust the Plan's administrative remedies.

(*Id.*) A plaintiff's personal conclusion about futility is not so dispositive of that issue.

The plaintiff also relies upon *Sibley–Schreiber v. Oxford,* 62 F.Supp.2d 979 (E.D.N.Y.1999), another Viagra claims case, decided in the Eastern District of New York. In *Sibley–Schreiber,* the court denied defendant's motion for dismissal of plaintiff's claims under Rule 12(b)(6) for failure to exhaust administrative remedies. *Sibley–Schreiber* bears a certain similarity to the instant case; however, that court found that each plaintiff before it "communicated with defendants on numerous occasions in an effort to get an exception from defendants' publicly announced policies." (*Id.* at 982).

The plaintiff cites the *Sibley–Schreiber* case for the statement:

> [T]here remains a genuine question as to whether exhaustion should be required in a case of this nature. In the face of a

---

*Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund,* 590 F.Supp. 211 (E.D.Pa. 1984) (Employer's denial letter did not sufficiently suggest that further appeal would be denied); *Wogman v. Teamsters Health and Welfare Fund of Philadelphia,* 1998 WL 461841 (E.D.Pa.) (Plaintiff did not exhaust remedies); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979) (No evidence of futility on the record.)

2. Nor can one ignore the fact that the ultimate arbiter in the Grievance Resolution Procedure is the Pennsylvania Department of Health. This neutral body, addressing a claim well within its jurisdiction and expertise, cannot be characterized as a rubber stamp for Prudential. There is neither direct proof nor a permissible inference to be drawn from this record that the appeal to the Department of Health would be futile.

company-wide promulgation of limited or no coverage unrelated to the personal circumstances of individual claimants, it is fair to question whether it makes sense to require insureds to jump through procedural hoops on their way to an inevitable denial of coverage. The same worthy considerations that spawned the judicially crafted exhaustion requirement in individual cases seem to counsel against such a precondition in those cases that feature across the board company-wide coverage policies. Indeed exhaustion for the sake of exhaustion, without any reasonable expectation of relief, serves no legitimate purpose except to deter insureds from seeking redress in the only forum that would offer a meaningful opportunity to vindicate rights secured in the insurance contract.

(*Id.* at 988).

Although this language has its persuasive features, this Court does not find it dispositive in the instant case. The Third Circuit rule on the issue of futility is a strict one, and following that precedent, futility has not been shown in this case. Second, the *Sibley–Schreiber* case involves facts which differ from those of the present matter. The *Sibley–Schreiber* court acknowledged the proposition that "Certainly, an allegation of futility is not satisfied by the mere showing that a claim was denied when initially presented to the insurance company." (*Id.* at 986), citing *Communications Workers of America v. American Tel. and Tel. Co.,* 40 F.3d 426, 433 (D.C.Cir.1994). The court found that "the case at bar differs significantly from these cases", based on the many affidavits submitted by the plaintiffs outlining their attempts to appeal Oxford's policy. *Sibley–Schreiber,* 62 F.Supp.2d at 986. One plaintiff's attorney even wrote a complaint letter to the New York State Attorney

General's Office. (*Id.* at 986). In the instant case, neither Mr. Harrow nor any identified potential class member ever pursued any appellate procedures with Prudential. For these reasons, this Court is not persuaded by the *Sibley–Schreiber* decision that futility has been shown in the case at bar.

Finally, the plaintiff argues that even if the named plaintiff in this case did successfully appeal the denial of benefits, the claims of the potential class would not be resolved. (Plaintiff's Br. at 8). However, even if true, that statement does not affect the exhaustion requirement, the purpose of which is to allow fiduciaries of employee benefit plans to meet their obligations. In addition, the requirement reduces the volume of ERISA litigation, and "define[s] the issues and evidence for those cases that reach a judicial forum." *Tomczyscyn,* 590 F.Supp. at 213 (citing *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980)). Whether one could predict that the plaintiff's exhaustion of remedies would affect defendant's professed position is irrelevant. Exhaustion is still required.

The plaintiff has not exhausted his administrative remedies, and the futility exception does not apply. Therefore, plaintiff's claim for wrongful denial of benefits is dismissed without prejudice.[3]

### B. The ERISA Exhaustion Requirement Applies to Plaintiff's Breach of Fiduciary Duty Claim.

■ The second count of the plaintiff's Complaint alleges that defendant breached its fiduciary duty to plaintiff. (Compl., ¶ 41). The plaintiff claims that defendant owed him and all other members of the class the duties articulated in 29 U.S.C. § 1104(a), including duties of loyalty and care. Plaintiff claims that: "In failing to insure that plaintiff and the members of

---

3. Plaintiff has also argued that defendant is precluded from raising the exhaustion defense because it is deemed to have admitted futility due to its untimely response to plaintiff's request for admission that exhaustion would be futile. (Plaintiff's Br. at 6–7, n. 3). This issue, however, is too important to be resolved by such an alleged default. The Court will give effect to defendant's May 1999 denial.

the class were furnished with coverage under the Plans for their Viagra prescriptions, defendants have failed to discharge their duties: (a) solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and beneficiaries; (b) with the requisite care and skill required of ERISA fiduciaries; and (c) in accordance with the documents and instruments governing the Plan." (*Id.*, ¶ 42).

The issue before this Court is whether plaintiff's failure to exhaust administrative remedies requires a dismissal of this second claim for breach of fiduciary duty. As discussed at length above, courts generally will not hear ERISA claims until plaintiffs have exhausted non-judicial administrative remedies. *Cohen v. Gross, Sklar & Metzger,* 703 F.Supp. 388, 389 (E.D.Pa.1989); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182 (3d Cir.1984). However, the Third Circuit recognizes another exception to that rule, articulated in *Zipf v. American Tel. and Tel. Co.,* 799 F.2d 889, 891 (3d Cir.1986). In *Zipf,* the court found that the rule requiring exhaustion of remedies "does not govern actions ... brought not to enforce the terms of the plan, but to assert rights granted by the federal statute." *Zipf,* 799 F.2d at 891.

In the instant case, plaintiff's second claim is a statutory claim, since it is based on 29 U.S.C. § 1104(a). However, this claim does not fit within the *Zipf* exception, and plaintiff is therefore required to exhaust his administrative remedies prior to initiating an action in court. The distinction made for statutory claims is based on the assumption that statutory claims are unlike claims for denial of benefits under ERISA. The rule has been articulated as: "Where statutory violations are alleged, a claimant need not exhaust his/her administrative remedies before seeking relief in federal court, whereas claims alleging a denial or requiring a recalculation of benefits must first be submitted on internal appeal to the plan." *Savage v. Connecticut General Life Insurance Co.,*

1996 WL 434288, 2 (E.D.Pa.1996). Plaintiff's claim is based upon the failure of the defendant to provide coverage for Viagra prescriptions. "In failing to insure that plaintiff and the members of the class were furnished with coverage under the Plans for their Viagra prescriptions, defendants have failed to discharge their duties...." (Compl., ¶ 42). Therefore, although couched in terms of a statute, plaintiff's claim is based on the Plan itself and the failure of the defendant to provide benefits under the Plan.

The rationale behind the *Zipf* exception further persuades this Court that the plaintiff should exhaust administrative remedies prior to pursuing this suit. The *Zipf* court found that the ERISA section which created the requirement of exhaustion was Section 503, referring only to procedures regarding claims for benefits. *Zipf,* 799 F.2d at 891. The claim in *Zipf* was a claim for discrimination under § 510 of ERISA. The court found that "When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in § 503, assigned the primary responsibility for evaluating claims for benefits." (*Id.* at 892). The reasoning behind the *Zipf* court's distinction was that statutory rights involved purely legal claims such as discrimination, which plan fiduciaries have no expertise in interpreting, and the courts are uniquely designed to handle. (*Id.* at 893).

In the instant case, although plaintiff's breach of duty claim clearly involves some legal issues, it is premised on the fiduciaries' responsibilities under the Plan. This is a topic on which the Plan fiduciaries have expertise. In addition, this Court believes that a claim for breach of a duty to provide benefits should not be brought before giving the Plan fiduciaries an opportunity to provide those benefits. This could only occur through exhaustion of administrative remedies.

The cases in this Circuit that fall within the *Zipf* exception are based on two types

of statutory claims: (1) discrimination claims under § 510 of ERISA, or (2) failure to provide plaintiffs with summary plan descriptions, as required by ERISA.[4] Both of these statutory claims are not conducive to exhaustion of remedies and are distinguishable from the instant claim. For these reasons, the plaintiff is required to exhaust his available administrative remedies before this Court will decide this matter. Since this Court has found that the plaintiff has not exhausted his remedies and that exhaustion would not be futile, the second count of plaintiff's Complaint must also be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and both Counts of plaintiff's Complaint are dismissed, without prejudice but with costs.

---

4. *See Zipf v. American Tel. and Tel. Co.*, 799 F.2d 889 (3d Cir.1986) (plaintiff's claim was under § 510 of ERISA); *Cohen v. Gross, Sklar & Metzger*, 703 F.Supp. 388 (E.D.Pa.1989) (plaintiffs' claim for failure to supply them with Summary Plan Description as required by statute); *Savage v. Connecticut General Life Ins. Co.*, 1996 WL 434288 (E.D.Pa.1996) (plaintiff brings claim under § 510 of ERISA for discrimination); *Campbell v. Emery World Wide*, 1994 WL 519708 (E.D.Pa.1994) (claim for failure to provide employees with summary plan description).