

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2002

# Harrow v. Prudential Ins Co

Precedential or Non-Precedential:

Docket 0-5049

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Harrow v. Prudential Ins Co" (2002). *2002 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 30, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5049

STANLEY HARROW, on behalf of himself and all others
similarly situated; DEBRA HARROW, Administrator of the
Estate of Stanley Harrow

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA; JOHN
DOES No. 1-10, individually and in their fiduciary Plan
Administrators of the Prudential Health Care Plans

       DEBRA HARROW, Administrator of
       the Estate of Stanley Harrow, on
       behalf of the Estate of Stanley
       Harrow and all others similarly
       situated,
       Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 98-cv-02464
(Honorable John W. Bissell)

Argued: September 22, 2000

Before: SLOVITER, SCIRICA and GARTH, Circuit  Judges

(Filed: January 30, 2002)

MICHAEL D. GOTTSCH, ESQUIRE
  (ARGUED)
RAMONA MARIANI, ESQUIRE
Chimicles & Tikellis
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

KENNETH A. JACOBSEN, ESQUIRE
22 West Front Street
Media, Pennsylvania 19063

 Attorneys for Appellant

JAMES C. ORR, ESQUIRE
  (ARGUED)
KELLY A. WATERS, ESQUIRE
Wilson, Elser, Moskowitz, Edelman
 & Dicker
33 Washington Street
Newark, New Jersey 07102

 Attorney for Appellee,
 Prudential Insurance Company of
 America

OPINION OF THE COURT

SCIRICA, Circuit Judge.

Debra Harrow, administratrix of her husband Stanley Harrow's estate, appeals an order granting summary judgment to Prudential Insurance Company on her claim that Stanley Harrow and a putative class of plaintiffs were wrongfully denied insurance coverage for Viagra, in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. S 1132(a)(1)(B) and 29 U.S.C. S 1104(a). The District Court granted Prudential's motion for summary judgment, finding plaintiff failed to exhaust administrative remedies before instituting suit. Harrow v. Prudential Ins. Co., 76 F. Supp. 2d 558 (D.N.J. 1999).

We will affirm.

I.

Stanley Harrow was insured under the Prudential
HealthCare HMO Plan through his wife, Debra Harrow. In
1998, Mr. Harrow was prescribed Viagra, an FDA-approved
drug, for diabetes-related impotence.1  On April 21, 1998,
Mr. Harrow filled his prescription for Viagra at a local
pharmacy. During this visit, his pharmacist informed him
that his insurance did not cover Viagra, charged him
$85.99 to fill the Viagra prescription, and instructed him to
call Prudential. Upon returning home, Mr. and Mrs. Harrow
reviewed the Prudential HealthCare HMO Plan handbook.
On that same day, Mrs. Harrow called the claims
department number listed on the back of the Prudential
prescription card. She was informed by an unidentified
person that the plan did not cover Viagra because it was a
"new drug." She was also advised to save her receipts for
future reimbursement in case Viagra became covered. The
Harrows never contacted Prudential again about Viagra
coverage and never refilled the prescription. On May 21,
1998, a month after being told Viagra was not covered, Mr.
Harrow filed suit under ERISA. In June or July of 1998,
Prudential announced in a press release that it would not
provide coverage for Viagra.

Prudential's procedures for receiving and resolving
complaints raised by covered persons are set forth in the
Prudential HealthCare HMO Plan handbook.2  Under the
heading "Grievance Resolution Procedure," the multi-step
process is described as follows:

        COMPLAINTS:

        Complaints can be received by the Membership

_____

1. Viagra received FDA approval on March 27, 1998.

2. As noted, the Harrows received the Prudential handbook outlining
these procedures and reviewed the handbook prior to calling the
telephone number on their Prudential prescription card. But Mr. Harrow
asserted that he learned of Prudential's internal grievance procedures for
the first time during deposition questioning by opposing counsel. When
asked whether he made any follow-up telephone calls or wrote any
letters after reviewing the plan documents, Mr. Harrow stated only that
he gave the plan documents to a lawyer.

3

Services Coordinator in the Prudential HealthCare Member Services Department by phone, mail or a personal visit to the Prudential HealthCare office. The Membership Services Coordinator will provide an answer to the complainant within 30 days of a complaint's receipt. If your problem is not resolved to your satisfaction, you may file, in writing, a formal grievance.

GRIEVANCES:

There are two steps in the Grievance Procedure. At any state of this process, the member has the right to request that Prudential HealthCare appoint a member of its staff, who has had no direct involvement with the case, to represent the member.

STEP ONE:

If the complaint procedure does not resolve your problem to your satisfaction, you may file, in writing, a formal grievance. The initial grievance will be reviewed and investigated by an Initial Grievance Committee . . . . The Committee will provide a response, in writing, to the complainant within 30 days of receipt of the grievance, including the reasons for the decision and the member's appeal rights. This decision is binding unless the member appeals the decision . . . .

STEP TWO:

APPEAL OF GRIEVANCES

If an appeal is desired, the complainant will be advised to formally request, in writing, the convening of the Second Level of Grievance Review Committee . . . . This committee shall consist of at least one-third Prudential HealthCare Plan members . . . .

An ultimate appeal procedure is available to the member. If the member is not satisfied with the decision of the Second Level Grievance Review Committee, the decision may be appealed to the Pennsylvania Department of Health.

Several Prudential officials testified the outcome of the

internal appellate process was not pre-determined. 3 Harrow, 76 F. Supp. 2d at 560. No evidence was presented demonstrating that Mr. Harrow or any proposed class member initiated a grievance or appeal under Prudential's grievance resolution procedure. Id.

II.

Prudential filed a motion to dismiss, which the District Court denied without prejudice on January 25, 1999. In the same order, the District Court adjourned, without date, plaintiff 's motion for class certification so that discovery could be undertaken. The originally named plaintiff, Stanley Harrow, died on June 25, 1999 and his wife was substituted as the named plaintiff and proposed class representative.4 The District Court subsequently granted defendant's motion for summary judgment on December 23, 1999. Id. at 559.5

The District Court granted summary judgment for the defendant on plaintiff 's wrongful denial of benefits claim for failure to exhaust administrative remedies: "Making one step which could be construed as an initial complaint does not constitute exhaustion of all remedies, particularly when the Plan includes a concrete description of the appeal

_____

3. These employees included Dr. Anthony Martin Kotin, Chief Medical Officer for Prudential HealthCare group, and Dr. Lisa Head, Chief Pharmacy Officer and Vice President of National Program and Business Development.

4. Plaintiff seeks to represent the following class:

>   all persons covered by a Prudential insurance plan or policy under
>   an employee welfare benefit plan who have (i) been diagnosed by a
>   physician as being either organically, structurally, or
psychologically
>   impotent; (ii) have had Viagra prescribed by a physician for their
>   impotence; and (iii) have been denied insurance coverage for all or
>   a portion of their Viagra prescription.

5. Plaintiff 's motion for class certification was not heard in light of the grant of summary judgment. The District Court explained that its grant of summary judgment on the grounds of lack of exhaustion precluded any further action. Id. at 561. We see no merit to plaintiff 's argument that exhaustion of administrative remedies should be waived when plaintiff seeks class-wide declaratory relief.

5

process available." Id. at 561–62. The District Court also concluded the futility exception to the exhaustion requirement did not apply because "neither Mr. Harrow nor any identified potential class member ever pursued any appellate procedures with Prudential." Id. at 564. In addition, the District Court granted summary judgment on plaintiff 's breach of fiduciary duty claim for failure to exhaust administrative remedies, concluding plaintiff was actually seeking benefits and therefore was subject to the exhaustion doctrine. Id. at 566.

This appeal followed.

III.

The District Court had jurisdiction under 28 U.S.C. S 1331. Id. at 559. We have jurisdiction under 28 U.S.C. S 1291.

IV.

We exercise plenary review over an appeal from a grant of summary judgment, applying the same standards as the District Court. Ingersoll-Rand Fin. Corp. v. Anderson, 921 F.2d 497, 498 (3d Cir. 1990). We review de novo the applicability of exhaustion principles, because it is a question of law. Cf. Diaz v. United Agric. Employee Welfare Ben. Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995) (citing Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980)). When the District Court declines to grant an exception to the application of exhaustion principles, we review for abuse of discretion. Id.; see also Dishman v. Unum Life Ins. Co. of Am., Nos. 99-55963, 99-56077, 2001 U.S. App. LEXIS 22599, at *23 (9th Cir. Oct. 17, 2001); Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 808 (7th Cir. 2000) ("[T]he intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion."); Springer v. Walmart, 908 F.2d 897, 899 (11th Cir. 1990) ("[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the

6

district court has clearly abused its discretion.") (quotation omitted).6

V.

A. The Legal effect of Stanley Harrow's death on his claims

1. Survivability of ERISA claims

Because the original named plaintiff has died in the course of these proceedings, we must consider whether his ERISA claim survives. Actions that are remedial in nature generally survive the death of a party. Khan v. Grotnes Metalforming Sys., Inc., 679 F. Supp. 751, 756-57 (N.D. Ill. 1988). Because Congress intended ERISA to be remedial, ERISA actions survive death. See 29 U.S.C.S 1001(b) ("It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans."); see also Duchow v. N.Y. State Teamsters Conference Pension & Retirement Fund, 691 F.2d 74, 78 (2d Cir. 1982); Khan, 679 F. Supp. at 756-57. Therefore, Mrs. Harrow may pursue her husband's claims.7

_____

6. We recognize that a "denial of benefits challenged under S 1132(a)(1)(B)
is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire
& Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392-93 (3d Cir. 2000). But Firestone and its progeny are not applicable here because we do not reach the issue of whether Prudential's decision to deny Viagra coverage was proper under the terms of the plan itself. Rather, we consider only whether the District Court properly required the plaintiff to exhaust administrative remedies before reviewing a denial of benefits. See Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186-87 (3d Cir. 1984) (applying exhaustion principles before the arbitrary and capricious standard).

7. When an executor or administrator continues with a decedent's claim, she "stands in the shoes of the decedent." Kamerman v. Ockap Corp., 112 F.R.D. 195, 196 (S.D.N.Y. 1986); see also Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir. 1971); Synder v. Baumecker, 708 F. Supp. 1451, 1458 (D.N.J. 1989).

## 2. Mootness of Harrow's claims

We must also determine whether an Article III case or controversy survives Mr. Harrow's death. U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1980) (identifying two aspects of mootness: "[W]hen the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome.") (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). The mootness issue implicates our jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90 (1998); Chong v. Dist. Dir., I.N.S. , 264 F.3d 378, 383 (3d Cir. 2001) ("Inasmuch as mootness would divest us of jurisdiction to consider this appeal, we are obligated to address this issue as a threshold matter.") (citing Rogin v. Bensalem Township, 616 F.2d 680, 684 (3d Cir. 1980)).

Mr. Harrow initially asked for injunctive relief, declaratory relief, and damages. Mrs. Harrow concedes the claim for injunctive relief is now moot because of her husband's death. Her claim for declaratory relief is also moot because Mr. Harrow cannot benefit from a declaration of Prudential's obligations under the plan. Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). But Mrs. Harrow still has a claim for damages (i.e., reimbursement of the $85.99 spent on the Viagra prescription). Therefore, plaintiff 's damage claim is not extinguished by Mr. Harrow's death.

## B. Summary Judgment was properly granted on plaintiff 's benefits claim for failure to exhaust administrative remedies

An ERISA beneficiary may bring a civil action to"recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. S 1132(a)(1)(B). "Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under

8

the plan." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (citing Wolf, 728 F.2d at 185); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); see also Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980) ("[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA]."). Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato , 618 F.2d at 567. Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." Id.; see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile."). Plaintiffs merit waiver of the exhaustion requirement when they provide a "clear and positive showing of futility." Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995); see also Davenport v. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (exhaustion not excused because correspondence with employer did not amount to an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review would be futile") (quotation omitted); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) ("A plaintiff must show that `it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.' ") (quoting Lindemann v. Mobil Oil

9

Corp., 79 F.3d 647, 650 (7th Cir. 1996)); Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 216 (E.D. Pa. 1984) (plaintiffs must demonstrate that a policy is so fixed that an appeal would serve no purpose); cf. Scholl v. Qualmed, Inc., 103 F. Supp. 2d 850, 854 (E.D. Pa. 2000) (dismissing Viagra claim brought under the Federal Employee Health Benefits Act because futility not demonstrated where plaintiff was "unhappy" with coverage limitation, but did not "directly appeal").

Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally. See Berger, 911 F.2d at 916–17; Metz v. United Counties Bancorp., 61 F. Supp. 2d 364, 383–84 (D.N.J. 1999) (relying on Berger).

In Berger, we affirmed a finding of futility where the District Court excused three of four plaintiffs seeking retirement under a particular pension plan from exhausting administrative remedies. 911 F.2d at 917. We agreed the blanket denial of applications for a particular retirement plan -- and Edgewater's failure to comply with the plan's administrative procedures -- weighed in favor of concluding that "any resort by these employees to the administrative process would have been futile." Id. But we also affirmed the denial of the futility exception to a fourth plaintiff who had never asked for the specific type of retirement plan, holding: "We agree with the district court's conclusion that because Kier did not request 70/80 retirement, he is precluded from seeking judicial relief on his claims seeking to enforce the terms of the Plan." Id. The District Court here found Mr. Harrow's case to be more like that of the fourth plaintiff for whom the futility exception was not granted. The Court also cited to Metz, in which none of the plaintiffs had filed an application for enhanced benefits as required under the severance plan. See Metz, 61 F. Supp. 2d at 383–84.

10

Other courts of appeals have addressed whether the futility exception applies in circumstances that more closely mirror our case. These cases involve plaintiffs who, like Mr. Harrow, have requested plan benefits. Given the policies underlying the exhaustion requirement, these courts have been reluctant to grant the exception without clear evidence of futility. E.g., Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp., 215 F.3d 475, 480 (5th Cir. 2000); Weiner v. Klais & Co., 108 F.3d 86, 91 (6th Cir. 1997) (refusing to excuse exhaustion because plaintiff did not allege "any factual basis" for his futility claim); Diaz, 50 F.3d at 1485–86 (denying futility exception where Spanish-speaking claimants were delinquent in filing an administrative appeal, even though insurance company's on-site representative said, "They're not going to pay," because court found "record contains nothing but speculation to suggest that the administrators would have reached a preconceived result in that respect."); see also Wilson v. Globe Specialty Prods. 117 F. Supp. 2d 92, 99 (D. Mass. 2000) (requiring exhaustion where administrator arguably evidenced an intent to refuse plaintiff 's claim because court refused to "predict" how administrator would have decided the claim on review); Kulik v. Metro. Life Ins. Co., No. 96–1608, 1998 WL 404383, at *3 (M.D. Fla. Feb. 25, 1998) (unanswered letter summarizing phone conversation with plan administrator does not demonstrate futility because the letter contained no request for information and no reference to plaintiff 's intent to appeal denial of his claims).8

_____

8. Plaintiff relies in part on Sibley-Schreiber v. Oxford Health Plans, Inc.,
62 F. Supp. 2d 979, 988 (E.D.N.Y. 1999) for his contention that the District Court misapplied the law regarding exhaustion of administrative remedies. This case is distinguishable on its facts. In Sibley, the District
Court found "overwhelming evidence" of futility where "numerous telephone calls were made to defendants in an effort to get an exception to the [insurance plan's] `no pay' and six pill policies. Plaintiff 's physician's were required to, and did, submit letters of medical necessity . . . [r]egardless of the efforts and opinions of plaintiffs' physicians, defendants consistently denied coverage beyond six pills after that policy was announced." 62 F. Supp. 2d at 986. The Sibley court recognized "Certainly, an allegation of futility is not satisfied by the mere showing that a claim was denied when initially presented to the insurance company." Id. (citing Comm. Workers of Am. v. Am. Tel. & Tel. Co., 40 F.3d 426, 433 (D.C. Cir. 1994)).

Here, the District Court summarized the evidence as follows:

> The Harrows did not pursue any action beyond this initial [telephonic] inquiry to Prudential . ... . They never refilled the prescription for Viagra . . . . In June 1998, Prudential made public statements that it would not cover Viagra. (Cave Dep. At 93). Dr. Lisa Head and Anthony Kotin have been deposed on the issue of Prudential's appeals process. (Defendant's Exhs. C, D). At Dr. Head's deposition, she stated that the fact that Prudential's policy was to deny coverage of Viagra would not mean that all appeals would be automatically denied.
>
> Q: Under those circumstances, would you expect any appeal to be successful?
>
> A. I would expect that the appeal would go through the process that we've outlined in previous testimony and that they would be given a fair assessment of the information available by that committee . . . . I would expect that it would go through the process. I don't know that that would be upheld in every circumstance.
>
> (Head Dep. at 62, 63, Defendant's Exh. C). However, there is evidence from internal e-mails within Prudential that perhaps the policy was more uniform than suggested by Dr.'s Head and Kotin. For example, one e-mail message stated "I'm carboning others just to ensure that we are clear that there is no local authority to approve coverage for Viagra even on a single case exception basis or for a specific claimant." (Gottsch Decl., Exh. I). Finally, there is no evidence that any formal appeal from a denial of Viagra coverage was ever taken by any person who might arguably be a class member.

Harrow, 76 F. Supp. 2d at 560. Because the Harrows took no steps beyond an initial telephonic inquiry, the District Court held that plaintiff did not qualify for the futility exception. Id.

We see no abuse of discretion in the District Court's refusal to apply the futility exception to the exhaustion

12

doctrine. Mr. Harrow made one telephone call to Prudential before instituting an ERISA suit. Mr. and Mrs. Harrow reviewed the plan handbook outlining complaint procedures, but none were filed. The press release announcing Prudential's general policy of denying coverage was made at least one month after Mr. Harrow brought suit. Mrs. Harrow was told to save her receipts in the event Prudential did cover the drug, suggesting that internal administrative procedures would not necessarily be futile. Furthermore, Prudential administrators testified that the outcome of its internal appeal procedures was not predetermined, although as the District Court noted, there was conflicting testimony in this regard. Viewing the facts and weighing the relevant factors, we agree with the District Court that a plaintiff in these circumstances was obligated to do more than make one telephonic inquiry before instituting suit. In this sense, plaintiff did not act reasonably.

This case is difficult because at some point in the future -- in this instance, only a few months -- Prudential adopted a blanket policy denying coverage for Viagra. But at the time Mr. Harrow filed suit it was unclear and uncertain whether Prudential would automatically bar coverage. More importantly, the Harrows took no action after the initial phone call to an unidentified person to press their request. Under this set of facts, the exhaustion of remedies requirement demands more. For these reasons, we agree the futility exception does not apply and we will affirm the District Court's grant of summary judgment on the benefits claim for failure to exhaust administrative remedies.

C. Summary Judgment was properly granted on plaintiff 's breach of fiduciary duty claim

The District Court also dismissed the claim alleging breach of fiduciary duty for failure to exhaust administrative remedies. Mrs. Harrow contends the exhaustion requirement does not apply because she is asserting statutory rights under ERISA S 404, 29 U.S.C. S 1104(a).9 But the District Court held that the fiduciary

_____

9. 29 U.S.C. S 1002(21)(A) states: "a person is a fiduciary with respect to
a plan to the extent (i) he exercises any discretionary authority or

13

duty claim merely recast the benefits claim in statutory terms and was still subject to the exhaustion doctrine. We agree.

As noted, courts require exhaustion of administrative remedies prior to hearing an action for a denial of ERISA benefits. We apply the exhaustion requirement to ERISA benefit claims, but not to claims arising from violations of substantive statutory provisions. Zipf, 799 F.2d at 891 (administrative exhaustion not required when plaintiff alleged termination in violation of ERISA S 510); Savage v. Conn. Gen. Life Ins. Co., No. 96-1709, 1996 U.S. Dist. LEXIS 11106, at *2 (E.D. Pa. July 31, 1996) ("Where statutory violations are alleged, a claimant need not exhaust his/her administrative remedies before seeking relief in federal court, whereas claims alleging a denial or requiring a recalculation of benefits must first be submitted on internal appeal to the plan."), aff 'd , 162 F.3d 1151 (3d Cir. 1998); Blahuta-Glover v. Cyanamid Long Term Disability Plan, No. 95-7069, 1996 U.S. Dist. LEXIS 5786, at *13 (E.D. Pa. May 1, 1996).10

_____

discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." Section 1104(a) sets forth a"prudent man standard of care" for fiduciaries:

>       a fiduciary shall discharge his duties with respect to a plan solely in
>       the interest of the participants and beneficiaries and--
>
>       (A) for the exclusive purpose of:
>
>       (i) providing benefits to participants and their beneficiaries; and
>
>       (ii) defraying reasonable expenses of administering the plan; . . .
>
>       (D) in accordance with the documents and instruments governing
>       the plan
>
>       . . . .

10. The circuits "are in sharp disagreement" as to whether plaintiffs must exhaust administrative remedies before bringing an action in federal court to assert a violation of substantive statutory provisions like ERISA S 510 (unlawful termination) and S 404 (breach of fiduciary duty). Smith v. Sydnor, 184 F.3d 356, 364 (4th Cir. 1999). Compare id. at 365

In Zipf, we explained why we do not apply the exhaustion doctrine to claims arising under substantive provisions like S 510:

> When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits . . . However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite. Unlike a claim for benefits brought pursuant to a benefits plan, a Section 510 claim asserts a statutory right which plan fiduciaries have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent. Indeed, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions.

Id. 892-93.

To date, the cases applying the Zipf exception have primarily fallen in two categories: "(1) discrimination claims under S 510 of ERISA, or (2) failure to provide plaintiffs

_____

("[T]he judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA."); and Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991) ("The exhaustion requirement applies to plaintiffs' benefits claim, but does not apply to the plaintiffs' fiduciary breach claim because this claim
alleges a violation of the statute, ERISA, rather than the Plan."); and Held v. Manf. Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir. 1990) (not requiring exhaustion for an unlawful termination claim); with Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1316 (11th Cir. 2000) ("We apply this exhaustion requirement to both ERISA claims arising from the substantive provisions . . . and ERISA claims arising from an employment . . . agreement."); and Lindemann , 79 F.3d at 650 (stating District Court has discretion to require exhaustion for ERISA S 510 claim).

with summary plan descriptions, as required by ERISA."
Harrow, 76 F. Supp. 2d at 566 & n.4 (listing cases). But the
rationale articulated in Zipf is equally applicable to claims
brought under ERISA SS 404-406, 11 U.S.C.S 1104(a), for
breach of fiduciary duty because these claims are also
statutory. See Glenn Smith, 184 F.3d at 364 n.7.

Plaintiffs cannot circumvent the exhaustion requirement
by artfully pleading benefit claims as breach of fiduciary
duty claims. Drinkwater v. Metro. Life Ins. Co. , 846 F.2d
821, 826 (1st Cir. 1988) (exhaustion doctrine would be
"rendered meaningless" if plaintiffs were allowed to bypass
exhaustion by artfully dressing contract claims in statutory
clothing). When the facts alleged do not present a breach of
fiduciary duty claim that is independent of a claim for
benefits, the exhaustion doctrine still applies. See Smith,
184 F.3d at 363 (independent fiduciary duty claim
established where plaintiffs alleged that defendants sold
preferred stock at undervalued prices); Diaz, 50 F.3d at
1484-85 (discussing applicability of exhaustion where
plaintiffs alleged that plan's failure to notify them in
Spanish was a statutory breach). A claim for breach of
fiduciary duty is "actually a claim for benefits where the
resolution of the claim rests upon an interpretation and
application of an ERISA-regulated plan rather than upon
an interpretation and application of ERISA." Smith, 184
F.3d at 362.11

Here, plaintiff 's complaint states:

> In failing to insure that plaintiff and members of the
> class were furnished with coverage under the Plans for

_____

11. In Smith, the United States Court of Appeals for the Fourth Circuit
considered the artful pleading problem in the ERISA context. Upon
examining Simmons v. Willcox, 911 F.2d 1077 (5th Cir. 1990) and
Drinkwater the court concluded that plaintiffs were required to exhaust
administrative remedies before bringing a claim for breach of fiduciary
duty in federal court where the basis of the claim is a plan
administrator's denial of benefits or an action by the defendant closely
related to the plaintiff 's claim for benefits, such as the withholding of
information regarding the status of benefits. 184 F.3d at 362 ("[I]t is
clear that such a claim is a naked attempt to circumvent the exhaustion
requirement.").

16

their Viagra prescriptions, defendants have failed to discharge their duties: (a) solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and beneficiaries; (b) with the requisite care and skill required of ERISA fiduciaries; and (c) in accordance with the documents and instruments governing the Plan.

Harrow, 76 F. Supp. at 565.

Given this language, the District Court concluded plaintiff was recasting a benefits claim in statutory terms as a means of bypassing the exhaustion requirement. Id. ("[A]lthough couched in terms of a statute, plaintiff 's claim is based on the Plan itself and the failure of the defendant to provide benefits under the Plan."). The District Court explained:

> [P]laintiff 's breach of duty claim clearly involves some legal issues, [but] is premised on the fiduciaries' responsibilities under the Plan. This is a topic on which the Plan fiduciaries have expertise. In addition, this Court believes that a claim for breach of a duty to provide benefits should not be brought before giving the Plan fiduciaries an opportunity to provide those benefits. This could only occur through exhaustion of administrative remedies.

Id.

We agree that plaintiff is actually challenging a denial of benefits, and not conduct amounting to a statutory breach of fiduciary duty. Unlike the plaintiffs in Smith, Mrs. Harrow does not allege facts that, if proven, establish a breach of fiduciary duty independent of the denial of benefits (e.g., selling preferred stock at an undervalued price). As the District Court observed, the language of the complaint itself demonstrates that Mrs. Harrow's claim was actually premised on the plan administrators' failure to furnish plaintiff with insurance coverage for Viagra. Furthermore, Mrs. Harrow attempts to bolster her argument that the fiduciary duty claim is "independent" by arguing for the first time on appeal that Prudential failed to issue a written denial of benefits as required under 29

17

12. Generally, we do not review issues raised for the first time at the appellate level, and we do not choose to exercise our discretion to do so here. Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 646 (3d Cir. 1998).

U.S.C. S 1133(1).12 To be sure, "many employee claims for plan benefits may implicate statutory requirements imposed by ERISA . . . [b]ut that prospect does not give a claimant the license to attach a `statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures." Diaz, 50 F.3d at 1484. The Harrows made only one phone call to Prudential before instituting the present suit and cannot now excuse their failure to exhaust administrative remedies by draping a benefits claim in statutory language.

Having concluded that Mrs. Harrow's claim for breach of fiduciary duty constitutes a recasting of a claim for benefits, we hold that the District Court properly granted summary judgment for failure to exhaust administrative remedies.

VI.

For these reasons, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18